309 So.2d 197 (1975)
Gary Joseph LA FOLLETTE, Appellant,
v.
Jerry Ray VAN WEELDEN, Appellee.
No. V-248.
District Court of Appeal of Florida, First District.
March 14, 1975.
Janet W. Behnke, Ocala, for appellant.
Stanley Ray Gill, Musleh & Gill, Ocala, for appellee.
JOHNSON, Judge.
This is an appeal by the natural father from a final judgment of adoption of a three-year old child awarded to the stepfather of the child.
The natural father and mother were divorced in Iowa in March or May of 1972, In July 1972, the mother moved to Ocala, Florida, and shortly thereafter the petitioner-appellee in this proceedings, married her.
The divorce decree had awarded the custody of the minor child of the parties, to the mother, with reasonable visitation to the father. Also an award of support money of $40.00 per month for the child. By agreement, the monthly support payments were to be placed in a trust fund. This was done, although not exactly as the mother had understood it was to be done.
There was apparent bad blood between the father and mother. The father went to see the child as often as he could before *198 the child was moved to Florida. The undisputed testimony of the father via deposition, was that he sent gifts to the child, but that he had to do it through his mother. Also, he tried many times to talk by phone to the wife and the baby, but she would not permit much conversation and none with the child.
After about eight months, the petitioner-appellee in this case, who had married and was living in Ocala with appellant's ex-wife, filed his petition to adopt the child in question.
The adoption proceedings progressed to final hearing, after some delays and change of attorneys. The petitioner-appellee, his wife, the mother of the baby, and four other persons testified in behalf of the petitioner. Two of these four witnesses were the sister and brother-in-law of the mother. The sum substance of this testimony was that the petitioner wanted to adopt the child so that he could develop a father-son relationship; that he could give the child a good home, good care and education. None of the witnesses said anything derogatory about the natural father, except the mother who claimed that the father had not shown any interest in the child.
The evidence of the father in defense against the adoption was by four depositions in support of the father, one of such depositions being his own. In his deposition, he relates that he was able to spend quite a bit of time with the child after the divorce and before the child was moved to Florida. The other depositions were in support of his position and that he was a good father. It was also pointed out in the father's deposition that one time the mother and the petitioner returned to Iowa and the father sought court action against the mother via contempt of court for her failure to let the father visit the child. There was enough going on to definitely void any idea of abandonment.
The trial court entered its final judgment of adoption on the basis that it was to the best interest of the child. Under the circumstances outlined supra, we must disagree with the findings and conclusions of the trial court.
A natural parent may submit to an adoption by giving consent. He may so conduct himself as to show a complete abandonment. But, absent the two criteria cited supra, it takes a mighty clear and convincing set of facts before the privileges and responsibilities of the father can be taken away from him.[1]
What may look to be in the best interest of a child could be applicable to many children, especially those with low-income parents, if the best interest is measured only in the material wealth. But we do not believe that the trial court, nor is this Court endowed by divine power to see into the minds of the parents, nor in the future of the child. This father was very adamant about wanting to have his child grow up under his name. In time, the father-son relationship could have flourished. As to the petitioner's desire to establish a father-son relationship, the witnesses of the petitioner testified that such a relationship was already in existence.
The court of Iowa had given the father the right of visitation with the child. What the Florida Courts in this proceeding would do was to completely nullify the divorce decree, so far as the child was concerned, and all rights of future visitation by the father would be destroyed.
We think the evidence in this case did not warrant the final judgment of adoption, and therefore we reverse the order of adoption. If at some time in the future the father changes his mind and consents to adoption, or the circumstances would so change as to warrant a new look *199 at the situation, this decision is without prejudice for such a new petition being entertained under such changed circumstances.
RAWLS, C.J., and McCORD, J., concur.
NOTES
[1] In re Adoption of Gossett, 277 So.2d 832 (Fla.App.1st, 1973).