416 So.2d 1253 (1982)
Jane Mikels WYLIE and John Wylie, Appellants,
v.
Michael E. BOTOS, As Intermediary in Adoption, Appellee.
No. 81-1233.
District Court of Appeal of Florida, Fourth District.
July 21, 1982.
*1254 Joseph S. Karp of Bernstein, Sharff, Monchick & Karp, West Palm Beach, for appellants.
Richard E. Bosse of Rappaport & Bosse, Boca Raton, for appellee.
ANSTEAD, Judge.
Appellants Jane Mikels Wylie and John Wylie appeal an order granting a petition for the adoption of their child born out of wedlock, and denying their petition for writ of habeas corpus seeking return of the child from appellee Michael Botos, who acted as an intermediary for the adoptive parents. The Wylies assert that the trial court erred procedurally in receiving evidence as to Mr. Wylie's alleged abandonment of the child in that the adoptive parents neither explicitly raised the issue of abandonment in their pretrial pleadings nor moved at trial to amend these pleadings to conform with the evidence presented on this issue. They further assert that the judge below erred substantively in making a dispositive finding in his final orders that Mr. Wylie had in fact abandoned the child.
The evidence adduced below revealed that appellants, then unmarried, were living together in the home of Mr. Wylie's parents when the child was conceived sometime in the latter part of 1979. In March of 1980, Mrs. Wylie visited a physician, who confirmed her suspicions of pregnancy and discussed several alternatives with her, including adoption. Appellants discussed their alternatives and Mr. Wylie agreed to defer *1255 to Mrs. Wylie's decision. Mrs. Wylie subsequently informed the physician that appellants had decided that the child would be given up for adoption. Mr. Wylie knew at this time that he could have established his legal rights to the child by marrying Mrs. Wylie, but he declined to do so because he felt it would "look bad" if he married her while she was pregnant. In April and May Mr. Wylie tendered checks in the net amount of $700.00 to the physician with the understanding that this money would likely be refunded once the adoption proceedings were completed. The child was born on June 3, 1980. Two days later Mrs. Wylie executed a form consenting to the child's adoption, as required by Section 63.062(1)(a), Florida Statutes (1977). On June 6, the child was placed with the prospective adoptive parents by appellee Botos. On June 16 the prospective adoptive parents, pursuant to Section 63.112, Florida Statutes (1977), filed their petition for adoption, incorporating Mrs. Wylie's consent by reference.
The first indication that all was not well with the adoption occurred on July 9, when a social worker for the Department of Health & Rehabilitative Services, the state agency which has responsibility for adoption proceedings under Chapter 63, Florida Statutes (1977), received a telephone call from a man identifying himself as a friend of Mrs. Wylie's mother. The caller, who was later identified as the natural mother's stepfather, stated that Mrs. Wylie's mother had been unaware of her daughter's pregnancy and desired to keep the child. On July 14, the Wylies advised the social worker that the appellants had changed their minds and now wanted the child returned. On August 7, the Wylies moved for an in-camera inspection of the court files pertaining to the adoption, incorporating by reference an acknowledgment of paternity executed the same day by Mr. Wylie. Four days later, the Wylies filed written objections in the adoption action, and a petition for habeas corpus was filed on August 22. On October 27, 1980, the Wylies married.
Hearings were held before the lower court on the petitions for adoption and writ of habeas corpus on June 4 and 5, 1981, and on June 25 the judge below entered orders in favor of the adoptive parents on both petitions.[1]
Section 63.062, Florida Statutes (1979), provides:
63.062 Persons required to consent to adoption. 
(1) Unless consent is excused by the court, a petition to adopt a minor may be granted only if written consent has been executed after the birth of the minor by:
(a) The mother of the minor.
(b) The father of the minor, if:
1. The minor was conceived or born while the father was married to the mother.
2. The minor is his child by adoption.
3. The minor has been established by court proceeding to be his child.
4. He has acknowledged in writing, signed in the presence of a competent witness, that he is the father of the minor and has filed such acknowledgment with the vital statistics office of the Department of Health and Rehabilitative Services.
5. He has provided the child with support in a repetitive, customary manner.
Section 63.072(1) further provides:
63.072 Persons whose consent to an adoption may be waived.  The court may excuse the consent of the following individuals to an adoption:
(1) A parent who has deserted a child without affording means of identification or who has abandoned a child[.]
Under Section 63.062(1), the consent of the natural mother of a child born out of wedlock is required in all cases unless excused by the court. However, a natural father, unlike a natural mother, is required to take some sort of affirmative action in order to make his consent, or the excuse of *1256 it, a prerequisite for the child's adoption. See In Re The Adoption of Mullenix, 359 So.2d 65 (Fla. 1st DCA 1978). The statute is silent as to exactly when such action must be taken. Section 63.112 requires that a petition for adoption identify all persons whose consent is required and that written consents be attached to the petition or circumstances set out that excuse the absence of such consents. This section clearly contemplates that action be taken by the natural father prior to the filing of the petition for adoption. Otherwise the petitioners would have no reason to list the natural father as one whose consent is required. Since the natural father here had done nothing to require that the adoptive parents secure his consent, it was not necessary for the adoptive parents to allege any excuse for not securing his consent in their petition.
The question remains, however, as to what effect if any the natural father's subsequent filing of an acknowledgement of paternity had on the adoption proceedings. Clearly, if properly and timely filed, an acknowledgement makes the natural father's consent or excuse therefor a prerequisite to securing a final decree of adoption. We simply cannot determine with certainty whether the legislature intended to cut off the rights of a natural father, who, although on notice of his paternity of a child and the pendency of adoption activities, files no acknowledgement of paternity before the legal adoption proceedings are commenced.[2] We conclude, however, that, regardless of the absence of the father's written consent or excuse therefor, under the facts of this case the trial court acted correctly in denying the natural father's claim and in granting the adoption.[3]
The judge below found that the adoption was proper because the natural mother's consent had been executed in accordance with the law and the natural father's consent, seemingly required under Section 63.062(1)(b), could be excused under Section 63.072(1) because he had abandoned the child. The trial court concluded:
In the instant case, the father took no interest in or responsibility for the child then developing in the mother's womb. They discussed the matter but, in his words, they did not discuss it that much because it just did not matter that much. He knew of the plan to place the child for adoption through Dr. Wargo's office and the possibility that the medical expenses could be refunded. He went along with it because "it was her decision." He put a seal of approval on the plan to the extent of $700.00, knowing that the child would be adopted by strangers. He exhibited nothing but a set purpose to shed himself of this responsibility. Only after the July 9th, 1980, telephone calls from the mother's step-father, indicating that the grandmother wanted to adopt the child, is the appearance of an interest in the child. That this interest was generated at the urging of the grandmother was apparent in his inability to explain the import of the acknowledgement of paternity even with the document before him. It is also apparent in the change of lifestyle, i.e. moving from a boat to a home, advancing the wedding date, once grandmother *1257 learned of her status as grandmother. It is, therefore:
ORDERED that the petition for adoption is granted and the writ of habeas corpus discharged.
The trial court concluded, in essence, that the natural father and mother had both initially consented to the adoption of the child and were now trying to revoke that consent. The trial court found that no grounds had been established to justify revocation. The only complication was that the father had not executed a written consent. However, under the facts herein whereby it was established that he was fully aware of the adoption and agreed thereto, we believe he is estopped to now claim that his written consent was necessary.[4]
The only reason that written consent was not secured is that it was not necessary under the statute. It is clear that both the father and the mother did actually consent to the adoption. Under these circumstances we think the natural father's attempt to upset the adoption proceedings stands on the same footing as that of the natural mother.[5] In such circumstances it has been held that in the absence of fraud or duress a consent is irrevocable. In Re Adoption of Cox, 327 So.2d 776 (Fla. 1976). In Cox the Supreme Court noted:
It is frequently said that contested adoptions are the most difficult of all cases for trial judges. Where a natural mother seeks the return of her child after she has bettered her position to care for the child and has reconsidered her original motives for allowing the adoption, the burden placed on a trial judge is even more weighty. We recognize the difficulties inherent in making a decision in matters of this nature, and we are most reluctant to substitute our judgment (or let the district courts substitute their judgments) in the resolution of these emotionally-charged matters. Where the trial judge has guided his decision by reference to the best interest of the child and fully considered all of the evidence before him, there is very little room for the exercise of appellate discretion.
We believe the same considerations mandate approval of the trial court's judgment herein.
Accordingly, the judgment of the trial court is affirmed.
DOWNEY, J., and OWEN, WILLIAM C., Jr., (Retired) Associate Judge, concur.
NOTES
[1] The trial court found that the adoption would be in the best interests of the child and the appellants do not challenge that factual finding on appeal.
[2] In view of the urgent need for clear standards in this sensitive area, we confess a temptation to interpret the statutes as terminating the rights of such fathers who have not acted to secure their rights prior to the filing of a proper petition for the adoption of their children. Because the statutes are unclear we urge the legislature to address this matter.
[3] Although the behavior of the natural father might well not have constituted an abandonment of the child under Section 63.072 and hence would not have been an excuse for the absence of the natural father's consent to the adoption under Section 63.062 and the existing case law, see e.g. La Follette v. Van Weelden, 309 So.2d 197 (Fla. 1st DCA 1975); Durden v. Henry, 343 So.2d 1361 (Fla. 1st DCA 1977); Lovell v. Mason, 347 So.2d 144 (Fla. 1st DCA 1977); Barrett v. Reed, 363 So.2d 14 (Fla. 1st DCA 1978); Nelson v. Herndon, 371 So.2d 140 (Fla. 1st DCA 1979); In Re The Adoption of Sorensen, 385 So.2d 1057 (Fla. 4th DCA 1980); cf. In the Interest of J.F., 384 So.2d 713 (Fla. 3d DCA 1980); In re The Adoption of M.A.H., 411 So.2d 1380 (Fla. 4th DCA 1982), we have concluded that the issue of abandonment need not have been reached in this case.
[4] To hold otherwise would be to grant the natural father even greater rights than the natural mother possessed, a result which we do not believe the legislature intended. What would happen in a case where the natural father of a child born out of wedlock had no actual knowledge of the natural mother's pregnancy and maternity until after a petition for adoption was filed, a question of possibly constitutional dimensions, is not presented to us, since the natural father here was at all times fully aware of such facts. See generally Dept. of Health & Rehabilitative Services v. Herzog, 317 So.2d 865 (Fla. 2d DCA 1975); Case Comments: Constitutional Law  Adoption  Father of An Illegitimate Child Is Not Necessarily Entitled To Notice In Adoption Proceedings, 5 F.S.U.L. Rev. 486 (1977); The Unwed Father: Conflict of Rights In Adoption Proceedings, 7 F.S.U.L. Rev. 559 (1979); Family Law, 33 U.Miami L.Rev. 1069, at 1097-1099 (1979).
[5] The natural mother alleged that her consent had been secured through fraud and duress. The trial court concluded that there was not only an absence of evidence of fraud or duress but that the mother acted with complete deliberation and made a fully informed decision to place the child for adoption.