SCHEB, Judge.
R.W.S., a teenage father, challenges a summary judgment and a final judgment of adoption of his infant child born out of wedlock. We reverse.
The record reveals that the child, R.M.H., was born approximately a year after the teenage parents began dating. Prior to the child’s birth on February 24, 1987, the expectant parents met intermittently to discuss the situation. The day after the child’s birth, the mother, M.D.L., signed a consent to adoption. The Department of Health and Rehabilitative Services (HRS) authorized the placement of the infant in the custody of M.S.H. and M.R.H., the prospective adoptive parents on February 26. There was only casual contact between the child’s father and M.D.L., the mother, from the end of February until the end of May. The child’s mother stated that she did not talk about the child with the child’s father during this period.
On May 8, M.S.H. and M.R.H. filed a petition for adoption of the child. On May 26, the father filed a petition to intervene, which included a copy of his written acknowledgment of paternity filed with HRS on May 26. On the same day, the child’s mother filed a petition to revoke her prior consent to the adoption. However, on June 25, the child’s mother advised the court that she no longer objected to the adoption. On July 9, the father filed a motion for a summary judgment contending that since he had filed an acknowledgment of paternity, the adoption could not proceed without his consent. On July 30, the adoptive parents moved for summary judgment, claiming that the father’s consent was excused.
The trial court denied the father’s motion and granted the adoptive parents’ motion. In his order, the trial judge made several findings as a matter of law: (1) the father made a conscious decision to allow the adoption of his child; (2) the father was estopped from claiming his written consent was necessary and that he had lost his “opportunity interest” due to his delay in taking action to stop the adoption proceedings; and (3) the father had abandoned the child, as evidenced by his conduct before, *479 during, and after the child’s birth. Shortly thereafter, the trial court entered a final judgment of adoption in favor of the adoptive parents. This timely appeal by the father ensued.
In seeking to reverse the final judgment of adoption, the father argues that: (1) the trial court erred in granting a summary judgment based on abandonment since there was a material issue of fact regarding his intent to abandon the child; (2) his consent was necessary to the adoption since his acknowledgment of paternity was timely filed; and (3) Florida’s adoption statute unlawfully discriminates against unwed expectant fathers.
We think the trial judge erred in determining as a matter of law that the father had abandoned the child and that he was estopped from asserting that his consent was necessary before his child could be adopted due to his delay in filing an acknowledgment of paternity. We note that a summary judgment may be entered only when it is conclusively demonstrated that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fla.R.Civ.P. 1.510; Burroughs Corp. v. American Druggists’ Ins., 450 So.2d 540, 543 (Fla. 2d DCA 1984). Where there is any doubt or where conflicting inferences may reasonably be adduced from the evidence concerning the existence or nonexistence of a genuine issue of material fact, a motion for summary judgment must be denied. Id. Having reviewed the record, we think there exist material issues of fact concerning (1) whether the father had abandoned the child; and (2) whether he agreed to place the child for adoption, which would thereby estop him despite his delay from later claiming that his consent was necessary.
Regarding the abandonment issue, we initially find that the trial judge erred because he based his decision on the father’s conduct before, during, and after the birth of the child. We agree with the Fifth District Court of Appeal that a child must be born before it can be abandoned. In Re Adoption of Doe, 524 So.2d 1037 (Fla. 5th DCA 1988). Moreover, to constitute abandonment of a child, a natural parent’s conduct must manifest “a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to a child.” Solomon v. McLucas, 382 So.2d 339, 344 (Fla. 2d DCA 1980). Abandonment must be established by clear and convincing evidence and is generally not susceptible to a determination as a matter of law. Id. at 344.
We further disagree with the trial judge’s conclusion on the abandonment issue since we find facts in the record susceptible of different inferences regarding whether the father’s conduct, after the birth of the child on February 24 until the filing of his motion to intervene on May 26, conclusively established that he intended to abandon the child. The record reveals that the father knew that the adoption proceedings were in progress and did not take prompt steps to prevent the proceedings from continuing. The father displayed little interest in the child and largely ignored parental responsibility. On the other hand, the father did display some interest in the child in late May when he filed an acknowledgment of paternity with HRS and a petition to intervene in the adoption proceedings.
Turning now to the father’s contention that his consent to the adoption was necessary, we disagree with the trial judge’s conclusion. According to section 63.-062(l)(b), Florida Statutes (1987), if a father has filed a written acknowledgment of paternity with HRS, his written consent is necessary unless consent is excused by the court.[1] The trial court did not determine *480 that the unwed father’s acknowledgment of paternity was untimely simply because it was filed outside a particular time period. Instead, the trial judge excused the consent requirement since he found as a matter of law that the father had made a conscious decision to place the child for adoption and was estopped from now claiming his consent was necessary. The trial judge relied on Wylie v. Botos, 416 So.2d 1253 (Fla. 4th DCA 1982), in support of his decision.
We think the trial judge erred when he ruled as a matter of law that the father consented to the adoption. Despite evidence that the father may have consented to the adoption, both before and after the child’s birth, there is some evidence to the contrary. The father did not oppose the mother’s decision to place the child for adoption and displayed no interest in assuming any parental responsibilities prior to the child’s birth. Moreover, the father’s reluctance to consult the attorney, who was to handle the adoption, was not due to a change of heart concerning his consent to the adoption. Rather, his refusal to accompany the expectant mother to the attorney’s office to discuss the adoption was due to his personal animosity toward the attorney. Even though the father went to the hospital when the mother was in labor, he expressed no interest in seeing the child.
In addition, the father expressed no interest in providing support to the mother or child immediately after birth. While the father personally lacked resources to support the mother and child, there is evidence that his parents offered to help financially. In his discovery deposition, the father admitted knowing that if he wanted to stop the adoption, he would have to act immediately after the child’s birth. Instead, he did nothing until three days before the final adoption hearing was initially scheduled. The father also admitted that he was not losing sleep over the child’s birth and whenever his mother mentioned the child, he responded that it was “in the past.”
On the other hand, when the new father saw pictures of R.M.H. in May, he displayed an interest in the child. After discussing the situation with his mother and at her insistence, he consulted an attorney and filed a motion to intervene prior to the final adoption hearing. Because conflicting inferences may reasonably be adduced from the evidence in the record, we find entry of a summary judgment was improper.
Furthermore, we note that the doctrine of estoppel must be applied cautiously, and if the conduct on which the estoppel is based “is ambiguous and thus susceptible of two constructions, one of which is inconsistent with the right asserted by the party sought to be estopped, there is no estoppel.” Capital Bank v. Schuler, 421 So.2d 633, 638 (Fla. 3d DCA 1982). Although we think there is considerable evidence which tends to indicate that the father consented to the adoption, we cannot say the record conclusively establishes an estoppel as a matter of law.
For the reasons discussed above, we think the trial judge should have conducted an evidentiary hearing to resolve these disputed issues of fact rather than entering a summary judgment and a final judgment of adoption in favor of the adoptive parents. On remand, the trial judge should conduct such a hearing and consider evidence regarding the relationship between the parents and other interested persons, the teenage parents’ preparation or lack of preparation for parenthood, their ages, and intelligence, as well as other factors which may have obstructed the initial bonding between the father and the child.
We decline to address the father’s remaining point on appeal at this time since it was not properly before the trial court. Laursen v. Filardo, 468 So.2d 251 (Fla. 2d DCA 1985). Accordingly, we vacate the summary judgment and final judgment of adoption and remand for further proceedings consistent with this opinion.
THREADGILL, J., concurs.
*481 CAMPBELL, C.J., concurs in part and dissents in part.

. We note that neither the statute nor case law reveal the precise period of time in which the acknowledgment must be filed. The legislature may find it advisable to revisit section 63.-062(l)(b) and consider whether a specific time period in which fathers must file an acknowledgment with HRS should be included. We note that in Guerra v. Doe, 454 So.2d 1 (Fla. 3d DCA 1984), the Third District held that a natural father was not foreclosed from exercising his right to acknowledge paternity until the final judgment was entered. However, in Wylie v. *480 Botos, 416 So.2d 1253 (Fla. 4th DCA 1982) the Fourth District held that a father must file his acknowledgment of paternity with HRS prior to the filing of the petition for adoption.