544 So.2d 1136 (1989)
In the Interest of BABY BOY A., a Child.
No. 88-2702.
District Court of Appeal of Florida, Fourth District.
June 14, 1989.
Erskine C. Rogers III, West Palm Beach, for appellant-Richard Muller.
Bennett S. Cohn and Morris G. Miller of Cohen, Scherer, Cohn & Silverman, P.A., North Palm Beach, for appellee-Adoption Services, Inc., d/b/a Chosen Children.
POLEN, Judge.
Appellant, the putative father of the minor child, seeks reversal of the trial court's final order permanently committing the child to appellee, Chosen Children, a licensed child-placing agency, for subsequent adoption.
At the permanent commitment hearing, the trial judge adjudicated the child dependent and made numerous findings of fact including:
On November 11, 1986, the child's mother surrendered the child to Adoption Services, Inc., doing business as Chosen Children, a duly licensed child placing agency, for subsequent adoption and waived notice of all hearings and further proceedings. She did also appear before the court to acknowledge her voluntary placement of the child. The court placed the child in the temporary custody of Adoption Services on December 1, 1986.
... .
The putative father has not resided in the same home as the mother although he has provided some support for her and an older sibling. The father is still married to another woman in New York. The older sibling, Richard, has been previously adjudicated dependent on two occasions. He was first placed under protective supervision in the custody of his mother after being physically abused by *1137 the father. The mother was unable to provide suitable care, the child became malnourished, and was then placed in foster care.
The father was convicted and is serving time for aggravated child abuse upon Richard. He is on parole for a manslaughter conviction in New York and is wanted in that jurisdiction for parole violation. He has no viable plan for the care of the subject child were he free to assume parental responsibility. The father was in jail when the subject child was born and has remained in custody. Prior to his present incarceration, and other than his financial contributions, he offered little or no supervision or child care for Richard when he had full opportunity.
The trial court attempted to balance the rights of the child against those of appellant. We agree with the trial court that the best interest of the child is the primary concern. However, before terminating parental rights, the parent must be given every opportunity to preserve the family unit.
The legislature enacted chapters 39 and 409, Florida Statutes (1985), to serve the legislative intent that, once a child is adjudicated dependent, the child be either reunited with his parents, whenever possible, or placed in a permanent home as quickly as possible. Chapter 39 authorizes the trial court to commit the child, but this action must be in conjunction with the requirements of chapter 409.
The law requires the offering of either a performance agreement or performance plan prior to termination of parental rights. § 409.168(1)(b), Fla. Stat. (1985). Failure to make the offering, however, does not automatically preclude termination of parental rights. Sections 39.41(1)(f) and (f)(3)(a), Florida Statutes (1985), provide a mechanism whereby the trial court can permanently terminate a parent's rights and commit the child to an agency for subsequent adoption, if the trial court finds it manifestly in the best interest of the child to do so and finds by clear and convincing evidence that the parent has abused or neglected the child.
We recognize that a trial court need not wait until the prospective abuse or neglect occurs before severing the parental ties because the best interest of the child overrides parental rights. In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982).
In this matter, appellant was never offered the performance agreement. However, the trial court found clear and convincing evidence of prospective abuse or neglect sufficient to terminate appellant's parental rights. The trial court ultimately concluded it was manifestly in the best interest of the child to sever appellant's parental rights and permanently commit the child to appellee for subsequent adoption. We agree.
Accordingly, we affirm.
DELL, J., concurs.
WALDEN, J., dissents with opinion.
WALDEN, Judge, dissenting.
I would reverse because I deem the evidence insufficient to meet the clear and convincing standard of proof necessary to establish the need for termination of the appellant's parental rights, under section 39.467, Florida Statutes (1987), on any of the bases relied on by the trial court.
The appellant was never offered a performance agreement as is required by section 39.467(2)(d)1. The deprivation of that opportunity is error, as a matter of law, as well as fundamentally unfair under the circumstances of this case. See § 39.467(2)(d)(1), Fla. Stat. (1987).
Although appellant presented a plan for caring for his child while he is incarcerated and after he is released from jail, the trial court deemed it unworkable. While appellant's proposed plan for caring for the child may not be comparable to that available from better situated adoptive parents, the appellant should not be expected to do more than his best to provide support for his child, given his circumstances. The best interests of a child are not necessarily served by terminating a parent's rights because the parent's circumstances appear *1138 more troubled than those of prospective adoptive parents.
The appellant has not exhibited the intention to abandon Baby Boy A. See In re Adoption of R.M.H., 538 So.2d 477, 479 (Fla. 2d DCA 1989) ("[T]o constitute abandonment of a child, a natural parent's conduct must manifest `a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by law and nature so as to relinquish all parental claims to a child.' Solomon v. McLucas, 382 So.2d 339, 344 (Fla. 2nd DCA 1980)").
Appellant was jailed three days after the birth of Baby Boy A and has had no opportunity to show whether or not he will support the child. Abandonment must be established by clear and convincing evidence. In this instance the evidence of appellant's abandonment of Baby Boy A is non-existent. Both the appellant and the mother of Baby Boy A testified that appellant worked and provided food and clothing and paid rent, utility and medical bills, for the mother and for his other son, prior to being incarcerated. That conduct exemplifies a desire to retain a supportive parental relation as opposed to abandonment. While the trial court found the appellant's efforts toward providing support insufficient, those efforts nevertheless evidence acceptance, as opposed to shirking, of his parental responsibilities.
Rather than allow the appellant an opportunity to prove himself capable of fulfilling his parental responsibilities to Baby Boy A, speculation, derived from the appellant's past conduct toward another of his children, has weighted the decision in favor of termination of parental rights as to Baby Boy A. Such speculation does not meet the level of clear and convincing evidence that appellant will abandon Baby Boy A. Although appellant's means of providing support are undefined because of his impending incarceration, the fact that he has worked to provide support and has, in fact, provided support to both his first child and the mother of his children, is evidence, equally reliable as a predicator of his future intentions, as the speculation relied upon by the majority, that appellant may abandon his parental responsibilities toward Baby Boy A.
I would reverse and remand for the appellant to be offered a performance agreement so he may demonstrate whether he will support Baby Boy A.
I respectfully dissent.