548 So.2d 906 (1989)
in the INTEREST OF A.J.B., a Child.
No. 89-68.
District Court of Appeal of Florida, First District.
September 21, 1989.
*907 Lacy Mahon, Jr. and Mark H. Mahon, Jacksonville, for appellant.
Frank M. Scruby of Scruby & Scruby, Orange Park, for appellees.
WIGGINTON, Judge.
Allen Kent, the natural father of A.J.B., appeals a final judgment granting a petition filed by the child's natural mother and her husband for the husband's "stepparent adoption" of the child. We reverse.
The natural mother, Jayne Burdick, and her husband, Larry Burdick, initially were married in 1980 and divorced in 1986. Shortly thereafter, Mrs. Burdick and Mr. Kent lived together for a few months, during which time she became pregnant with A.J.B. However, by December 1986, she had terminated her relationship with Mr. Kent and had remarried Mr. Burdick, with Mr. Burdick being fully aware that she was pregnant with Mr. Kent's child. Mr. Burdick provided her constant support throughout her pregnancy and delivery (in April 1987), has provided continual support for her and A.J.B., and considers A.J.B. his own daughter. Mr. Kent has not paid child support for A.J.B. nor has he offered to provide support. He has neither visited the child nor ever requested to visit with her. However, he has made several attempts to no avail to contact Mrs. Burdick and the evidence shows that the Burdicks intended to preclude him from any relationship with A.J.B.
The instant action began in December 1987, when Mr. Kent filed his complaint against the Burdicks to establish his paternity of A.J.B. and requesting shared parental responsibility, visitation, and change of A.J.B.'s surname to Kent. In January 1988, the Burdicks filed an answer admitting that Mr. Kent is the natural father. Mr. Burdick also filed a counterclaim for stepparent adoption which was dismissed. In February 1988, Mr. Kent filed with the Department of Health and Rehabilitative Services an affidavit acknowledging that he is the natural father of A.J.B. On May 4, 1988, the court entered a partial summary judgment in favor of Mr. Kent on the paternity issue. On July 14, 1988, the Burdicks filed their amended "Counterclaim: Petition for Stepparent Adoption."
In November 1988, the trial judge entered the appealed order granting the Burdicks' petition. In his order, the judge recognized that Mr. Kent did not provide consent for the adoption and that neither abandonment nor any other legal excuse of consent was pled by the Burdicks. However, relying upon In Re: Adoption of Mullenix, 359 So.2d 65 (Fla. 1st DCA 1978) and Wylie v. Botos, 416 So.2d 1253 (Fla. 4th DCA 1982), he concluded that Mr. Kent's consent was not required since he had not met any of the section 63.062(1)(b), Florida Statutes, criteria for required consent of the father prior to the January 1988 filing of the original petition for adoption in this case. He determined that since Mr. Kent's consent was not required, the sole issue became the best interest of the child and that the child's best interest clearly required that the petition for adoption be granted.
The trial judge erred in determining that Mr. Kent's consent was not required under section 63.062(1)(b) and in thereupon applying the "best interest of the child" test in this case. That statute provides that a petition to adopt a minor may be granted only if written consent has been executed by the father of the minor when certain conditions have been met. The pertinent conditions sub judice are set forth in section 63.062(1)(b)3 and 4 which require consent of the father if the minor has been *908 established by court proceeding to be his child or if he has acknowledged in writing that he is the father of the child and has filed that acknowledgment with the Department of Health and Rehabilitative Services. The statute establishes no time by which one of those criteria must be met in order to require the consent of the father to an adoption. Section 63.072 provides for waiver or excuse of required consent under certain circumstances, none of which have been claimed in this case.
In Mullenix and Wylie, the court recognized that section 63.062 imposes upon a natural father the duty to take some type of affirmative action in order to make his consent, or the excuse thereof, a prerequisite to the child's adoption. In Wylie, the court noted that the statute is silent as to exactly when such action must be taken. The court went on to state: "This section clearly contemplates that action be taken by the natural father prior to the filing of the petition for adoption." However, in that case, the natural father had taken no action prior to the filing of the petition for adoption to establish his legal rights to the child, unlike the instant case in which Mr. Kent actually instigated this action by filing his paternity suit prior to the Burdicks' filing of their counterclaim wherein they petitioned for adoption by Mr. Burdick. Compare Guerra v. Doe, 454 So.2d 1 (Fla. 3d DCA 1984), in which the court determined that a father who had filed an acknowledgment of paternity with the Department of Health and Rehabilitative Services shortly after learning of the birth of the child and after the petition for adoption was filed but before the final adoption hearing, was entitled to a full and complete opportunity to exercise his parental rights in an adversary hearing on the issue of his consent.
In the instant case, clearly appellant had taken affirmative action to establish his paternity prior to the filing of the petition for adoption and, long before entry of the final judgment granting the petition, he had met two of the section 63.062 requirements so that his consent became a prerequisite, in the absence of a valid excuse which is not at issue here, to the adoption of this child. Under these circumstances, the trial judge erred in finding Mr. Kent's consent unnecessary and in granting the petition for adoption.
Reversed.
ERVIN and WENTWORTH, JJ., concur.