JOANOS, Judge.
Appellant John O’Bryan appeals the trial court’s order denying his objection to the adoption of Baby James Doe, and the order denying his motion for rehearing. The issues presented are (1) whether appellant has the right to assert an interest in the welfare of the minor child, (2) whether the trial court erred in denying appellant’s objection to appellees’ petition for adoption, and (3) whether appellant’s procedural due process rights were violated. We reverse.
On February 6, 1990, appellees John and Jane Doe filed a petition for adoption of a baby boy born December 20, 1989. The petition recited that the child sought to be adopted had been placed in an alternate care home by an intermediary, and that placement with the Does had not yet been approved by the Department of Health and Rehabilitative Services (HRS). The petition further stated that HRS informed the intermediary that appellant had alleged that he is the natural father of the child, but the allegation had been denied by the natural mother and her husband. Consent forms signed by the natural mother and her former husband were attached to the petition for adoption.
On February 13, 1990, appellant was served with a summons, a petition for adoption, and notice of a hearing to be held two days later on February 15,1990. The hearing took place as scheduled. Present at the hearing were the attorney for the Does and appellant, who represented himself. The issues were whether appellant had the right to request a blood test to confirm or deny his paternity, and if found to be the natural father, whether appellant’s consent to the adoption was required. The Does’ position was that conception occurred while the natural mother was married, and that the common law presumption of legitimacy precluded appellant from raising the question of paternity or to withhold consent to the adoption, because the natural mother and her former husband had given signed consents to the adoption.
Appellant testified that he is the natural father of the child to be adopted. He offered into evidence (1) an apartment lease signed by him and the natural mother, for the apartment in which they resided together during the natural mother’s pregnancy; (2) receipts for baby furniture, bedding, clothing, and gifts which he had purchased for the baby; and (3) an identification band worn by the mother using the name O’Bryan while she was in the hospital for the birth of the child. The judge examined the evidence, but returned it to appellant without comment.
The natural mother and her former husband did not appear at the hearing, and the Does presented no evidence to support the presumption that the former husband was the child’s natural father, or to refute appellant’s testimony that he had supported the child. In a letter dated February 26, 1990, HRS advised the trial court that the natural mother stated she had had an extramarital affair with appellant, and that she was not certain about the paternity of the child. On March 2, 1990, the trial court entered its order ruling on appellant’s objection to the adoption. The order contains the following findings:
A. Pursuant to Section 63.062, Florida Statutes, the consent of John O’Bryan is not required to consummate this adoption.
B. John O’Bryan has failed to rebut the common law presumption that the hus *988 band of the natural mother is in fact the natural father of the child to be adopted.
Based on these findings, appellant’s objection to the proposed adoption was denied.
On March 12, 1990, through counsel, appellant filed a motion for rehearing. Among other things, the motion alleged that in March 1989, appellant and the natural mother of the child to be adopted had sexual intercourse on several occasions, and that as a result of that intercourse the child was born December 20, 1989. The motion further alleged that the natural mother and her husband separated on March 14, 1989, at which time the mother obtained a temporary injunction against her husband. On October 26, 1989, a final judgment of dissolution of marriage was entered between the natural mother and her husband. The final judgment did not mention that the wife was pregnant with a child of the marriage, although the wife was then seven months pregnant. The motion alleged that throughout her pregnancy, the natural mother told appellant and many other persons that appellant was the baby’s father.
In addition to the foregoing, the allegations of the motion state that pursuant to section 63.062(l)(b), Florida Statutes, appellant’s consent to the adoption is required, because he had provided the child with support in a repetitive customary manner and had taken affirmative action to acknowledge paternity. Appellant’s repetitive support and affirmative action involved buying baby items for the child, taking the child into his custody with the assistance of the sheriff, quitting his job as a truck driver to establish a relationship with the child, and caring for the newborn infant for approximately two weeks. Further, appellant advised HRS that he was the child’s natural father, and he objected timely to the adoption. The natural mother then removed the child from appellant’s custody, and without his knowledge or consent, relinquished the child for adoption. The motion alleged that appellant also planned to file an acknowledgment of paternity with the Office of Vital Statistics. The motion sought rehearing of the order on appellant’s objection to the adoption, or in the alternative an order directing appellant, the child, and the natural mother to submit to human leukocyte antigen (HLA) blood tests. The motion also sought an award of custody or visitation with the child.
The motion for rehearing was denied summarily on March 29, 1990. On May 10, 1990, appellant filed a Statement of the Evidence and Proceedings. Appellees failed to file any objections or amendments to the statement. The trial court's order approving the statement was filed August 9, 1990.
A child born or conceived during a lawful marriage is a legitimate child. Dennis v. Department of Health and Rehabilitative Services, 566 So.2d 1374 (Fla. 5th DCA 1990). Therefore, one seeking to challenge the paternity of such child “has a strong, albeit rebuttable, presumption of legitimacy to overcome.” Knauer v. Barnett, 360 So.2d 399, 403 (Fla.1978); Gammon v. Cobb, 335 So.2d 261, 264 (Fla.1976). The rule is that the “proof must be sufficiently strong to clearly remove the presumption of legitimacy.” Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163, 164 (1944).
Because an unwed father is not similarly situated with an unwed mother or married father, he “is required to show that he has manifested a substantial concern for the welfare of his illegitimate child before he may be accorded standing to assert an interest with respect to that child.” Kendrick v. Everheart, 390 So.2d 53, 60 (Fla.1980).
Due to the advent of HLA testing with its better than ninety percent accuracy in determining probability of paternity, and such developments in the law as the Gammon v. Cobb decision, requests for paternity determinations are entertained which formerly were dismissed. See Holliman v. Green, 439 So.2d 955 (Fla. 1st DCA 1983). Moreover, paternity determinations have been permitted in contexts other than Chapter 742 paternity proceedings, where such determinations were essential to the adjudication of the ultimate relief sought. *989 See Kendrick v. Everheart, 390 So.2d at 59-60.
A father’s written consent to the adoption of his minor child is required pursuant to the criteria outlined in section 63.-062(l)(b), Florida Statutes, which provides:
(1) Unless consent is excused by the court, a petition to adopt a minor may be granted only if written consent has been executed after the birth of the minor by:
[[Image here]]
(b) The father of the minor, if:
1. The minor was conceived or born while the father was married to the mother.
2. The minor is his child by adoption.
3. The minor has been established by court proceeding to be his child.
4. He has acknowledged in writing, signed in the presence of a competent witness, that he is the father of the minor and has filed such acknowledgment with the vital statistics office of the Department of Health and Rehabilitative Services.
5. He has provided the child with support in a repetitive, customary manner.
In In the Interest of A.J.B., 548 So.2d 906 (Fla. 1st DCA 1989), in a fact scenario somewhat analogous to the instant case, the mother divorced her husband, and then lived for a few months with another man, during which time she became pregnant. The mother terminated the relationship with the other man before the child was born, and remarried her former husband— who was fully aware that she was pregnant with the other man’s child. The natural father neither paid nor offered to pay support for the child, nor ever requested to visit her. However, he made several efforts to contact the mother, and then filed a complaint to establish his paternity, requesting shared parental responsibility, visitation, and that the child’s name be changed to his surname. The mother and stepfather answered, admitting that appellant was the natural father, and filed a counterclaim for stepparent adoption. Thereafter, appellant filed an affidavit with HRS acknowledging paternity of A.J.B. The trial court entered a partial summary judgment in favor of appellant on the paternity issue, but ultimately granted the petition for stepparent adoption on the basis of In re Adoption of Mullenix, 359 So.2d 65 (Fla. 1st DCA 1978), concluding that the father’s consent was not required since he did not meet any of the section 63.062(1)(b) criteria prior to the filing of the original petition for adoption. This court reversed, finding that the natural father had taken affirmative action to establish paternity prior to the filing of the petition for adoption and long before entry of the final judgment. 548 So.2d at 908.
In this case, as in A.J.B., it was error to find that appellant did not meet any of the section 63.062(l)(b) criteria. First, appellant provided prebirth support in the manner contemplated by the supreme court in Matter of the Adoption of Doe, 543 So.2d 741, 746 (Fla.), cert. denied, by Roe v. Doe, — U.S. -, 110 S.Ct. 405, 107 L.Ed.2d 371 (1989). In that case, the supreme court held that in appropriate circumstances, “an unwed father would be justifiably entitled to argue that his conduct in providing pre-birth support to his unborn child was relevant to his claimed right to refuse consent to the adoption of his child.” Id., at 746. Second, for approximately two weeks, appellant provided support in the repetitive, customary manner contemplated by section 63.062(l)(b)5. Third, appellant substantially complied with section 63.062(l)(b)4, in that he telephoned HRS and acknowledged paternity, although at the time of the hearing (when he was not represented by counsel), he had not made a formal written acknowledgment or filed same with the office of vital statistics. (The record reflects that appellant did not obtain legal counsel until after issuance of the order denying his objection to the adoption.) Under the A.J.B. rationale, appellant had up until the issuance of the final judgment to meet the subsection (l)(b)4 criterion. Finally, we agree with appellant that In re Adoption of Mullenix is inapposite to this case, because the unwed father in Mullenix did not meet any of the section 63.062(1)(b) criteria, while appellant in this case provided support as contemplated by subsection (l)(b)5, *990 and took affirmative action to acknowledge paternity in the manner contemplated by subsection (l)(b)4.
Appellant’s first due process claim is directed to the lack of sufficient notice of the hearing on his objection to the adoption. The record in this case reflects that on February 13, 1990, appellant received a summons, the petition for adoption, and a notice of hearing on appellees’ motion to determine appellant’s rights with regard to the child to be adopted. The hearing was noticed for and held February 15, 1990, only two days after appellant received notice of the hearing. Florida Rule of Civil Procedure 1.090(d) provides:
A copy of any written motion which may not be heard ex parte and a copy of the notice of the hearing thereof shall be served a reasonable time before the time specified for the hearing. (Emphasis supplied).
The two days advance notice of the hearing provided to appellant in this case does not constitute proper notice under the rule. See Johnson v. Henck, 482 So.2d 588 (Fla. 1st DCA 1986).
Appellant’s second due process challenge is directed to the denial of his motion for rehearing without a hearing. The Florida Rules of Civil Procedure do not expressly provide for such hearing. However, as appellant maintains and appellees recognize, case law suggests that under some circumstances failure to hold a hearing on a motion which raises new matters that had not been argued to the trial court will not be deemed harmless error. See Carnell v. Carnell, 398 So.2d 503, 507 (Fla. 5th DCA), review denied, 407 So.2d 1102 (Fla.1981); Arlberger v. Harvison, 342 So.2d 537 (Fla. 3d DCA 1977).
Our comparison of the motion for rehearing and the statement of facts filed by appellant in this case, reveals that the motion for rehearing contains allegations that do not appear in the statement of the facts adopted by the trial court. Under the circumstances here, wheré the appellant only had two days notice prior to the hearing, we conclude that the trial court abused its discretion in summarily denying the motion for rehearing. Furthermore, appellant should have been afforded an opportunity to be heard on the matters raised in his motion for rehearing.
Accordingly, the order denying appellant’s objection to the adoption of Baby James Doe is reversed, and the matter is remanded for further proceedings.
SHIVERS, C.J., and ZEHMER, J., concur.