198 So.2d 373 (1967)
Eva Shaw MIXON, Appellant,
v.
William O. MIZE, Appellee.
No. I-145.
District Court of Appeal of Florida. First District.
May 4, 1967.
*374 Humphries & Moore, Jacksonville, for appellant.
Sistrunk & Kaler, Jacksonville, for appellee.
WIGGINTON, Judge.
Appellant has appealed a final decree awarding her custody of an illegitimate child born to her out of wedlock, and granting appellee visitation rights as the putative father of the child.
Appellant, an unmarried woman and the mother of three children born of a previous marriage, entered into a meretricious relationship with appellee at a time when he was married to another woman. As a result of this relationship, appellant gave birth to the illegitimate child involved in this proceeding. Appellee acknowledged himself to be the father of the child, paid all of the expenses incident to its birth and has provided ample financial support for the child during the entire period of his life. Appellant and appellee cohabited together during the period of their meretricious relationship, being separated only on those occasions when one or the other was away on a trip. The chancellor found that appellee was fully as good a father to the child as appellant was a mother. Appellee was the only father known to the child prior to the time the parties separated and appellant married another man.
Appellee brought this proceeding alleging that a common-law marriage was entered into between the parties shortly prior to their final separation, and praying that he be awarded a decree of divorce and custody of the illegitimate child of which he acknowledged himself to be the father. Appellant answered the complaint denying the existence of a common-law marriage between the parties, and praying that she be awarded the permanent custody of the child. By his decree the chancellor awarded custody to appellant mother with reasonable visitation privileges to appellee father. The decree requires appellee to pay weekly support money for the child until he becomes sui juris or self-sustaining, and further requires appellant to notify appellee in the event any proceedings are instituted to adopt the child. The decree further awarded appellee the right to visit with the child and have it with him at stated periods of time.
This litigation was bitterly contested by both parties, as is usually the custom in cases of this kind. The chancellor had the opportunity of observing the witnesses as they testified from the witness stand. By his memorandum opinion filed in the cause at the conclusion of the case, he found appellee to be a fit and proper person to have *375 the custody of the child, but concluded that due to its illegitimacy, the weight of precedent required that its custody be awarded to its natural mother. The chancellor stated in his memorandum that he found appellant mother to be an attractive, mercenary, materialistic, calculating, conniving, and bewitching woman interested only in herself and those things which would serve her best interest. He further stated that he believed substantially all the testimony adduced by appellee father, and disbelieved most of the testimony adduced by appellant mother. He specifically found that it would not be detrimental to the best interest of the child for the father to have the right to visit him at reasonable periods of time, and that under the circumstances of the case justice required that the father be granted this privilege. The chancellor's reasons for requiring that the father be given notice of any proceedings instituted for the purpose of adopting his illegitimate son by another were that the father's appearance and the testimony he might give could be considered in determining whether the best interest of the child would be served by permitting its adoption by another. The chancellor further found the evidence to be insufficient to establish the common-law marriage as claimed by appellee.
It is appellant's position that since appellee is the putative father of her illegitimate child, he has no legal right either to custody of the child, or to the privilege of visiting with him. She contends that the chancellor abused his discretion in awarding appellee visitation rights, and asks that this part of the decree be reversed.
Although there is a paucity of judicial expression on this issue, the weight of authority in this country, and what appears to be the sounder view, amply supports the chancellor's ruling. The courts having occasion to pass upon this question appear to have uniformly held that where a putative father acknowledges his relationship to an illegitimate child, manifests a genuine interest in the child's welfare and provides it with support, such father should be granted the right to visit the child at reasonable times unless such visits are shown to be detrimental to the child's welfare.[1] Nor do we agree that the chancellor abused his discretion in requiring appellant to notify appellee of the institution of any adoption proceedings concerning the child. In such proceeding appellee's testimony should be weighed by the court in determining whether the best interest of the child would be served if the court grants adoption to a third party. This requirement finds support in the law.[2]
We have carefully considered appellee's cross-assignment of error directed to that portion of the decree appealed which finds the evidence to be insufficient to establish a common-law marriage between the parties. The evidence reveals that the separation of the parties herein occurred only eighteen days after the alleged common-law marriage was consummated, followed by the marriage of appellant to another man within approximately two weeks thereafter. Such a turn of events severely weakens, if it does not in fact destroy, the conclusion that the parties entered into a marriage agreement as contended for by appellee. It is an accepted principle of law prevailing in this state that a relationship meretricious in its inception is presumed to continue, and the burden rests on the one claiming that the relationship evolved into a common-law marriage to establish the metamorphosis from concubinage to marriage.[3]
We find support both in the evidence and in the law for that phase of the decree denying *376 appellee's prayer for divorce. Appellee having failed to clearly demonstrate error, the cross-assignment of error is rejected and the decree appealed is affirmed.
RAWLS, C.J., and CARROLL, DONARD K., J., concur.
NOTES
[1] Commonwealth v. Rozanski, 206 Pa. Super. 397, 213 A.2d 155; In re Anonymous, (1958) 12 Misc.2d 211, 172 N.Y.S.2d 186; Baker v. Baker, (1913), 81 N.J. Eq. 135, 85 A. 816; Ex parte Hendrix, (1940) 186 Okla. 712, 100 P.2d 444.
[2] In re Brennan, (1965) 270 Minn. 455, 134 N.W.2d 126.
[3] Jordan v. Jordan, (Fla. 1956) 89 So.2d 22; McClish v. Rankin, (1943) 153 Fla. 324, 14 So.2d 714.