**Don GAY, Appellant,**

v.

**Nancy CAIRNS, Appellee.**

**No. 64718.**

Supreme Court of Iowa.

Nov. 12, 1980.

Daniel J. Jay, Drake Law Office, Centerville, for appellant.

Donald W. Harris, Bloomfield, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

McGIVERIN, Justice.

Does a father who has acknowledged paternity of an illegitimate child have a right to visit the child as long as the visitation is in the best interests of the child? We believe he does and reverse the trial court's dismissal of the father's petition for visitation.

Plaintiff Don Gay, the acknowledged father of the child, petitioned for a writ of habeas corpus against defendant Nancy Cairns, the natural mother, seeking visitation rights with their child, Amy Lean Gay, born October 22, 1976.

After trial the court ruled that because Don and Nancy had never been married, Don had no right of visitation that is enforceable by a court, and left visitation to Nancy's discretion. The court also concluded that even if there were a right to visitation, visitation by Don would not be in Amy's best interests. The court dismissed Don's petition.

Don appeals, contending (1) he has a right to visitation with his illegitimate child, and (2) it is in the child's best interests that visitation be granted.

I. *Background facts.* Don and Nancy met in 1974 and lived together for five years in Centerville, Iowa. During this period of cohabitation, Nancy gave birth to Amy. Don acknowledged paternity of the child and paternity is not now disputed by the parties. From April 1978 until they parted in August 1979, Don and Nancy cohabited in a house being purchased by Don. Mitchell Cairns, Nancy's child by a previous marriage, and Amy lived with them. This house was next door to the residence of Terri Powell, who at that time was married and had two children.

Don had an affair with Terri Powell and she became pregnant by him in the summer of 1979. Terri Powell's marriage was subsequently dissolved on September 19, 1979, and she was married to Don on October 11, 1979.

Don and Nancy's relationship broke up in the summer of 1979 after Nancy became aware of Don's affair. Nancy moved out of Don's house in August 1979. She took Amy and Mitchell with her. Nancy refused to allow Don to visit Amy outside Nancy's home, although visitation in Nancy's home has been arranged through Don's sister on a few occasions.

At trial Nancy testified regarding her relationship with Don. She stated she received ADC all the time she lived with him and she paid all the bills. She alleged Don had a drinking problem and had physically abused her. She also alleged that Terri was an unfit parent. She stated Don had not sent Amy Christmas presents in 1979. She said that she and Don discussed marriage but that Don always put it off.

On the other hand, Don denied the misconduct and excessive drinking alleged by Nancy. He has been employed most of the time since he met Nancy. He testified that Nancy had not wanted to get married be-

cause she wanted to continue receiving ADC. He claimed a close and loving relationship with Amy and this was verified by others. He also stated he provided a house for Nancy and the two children while they lived together. Thereafter, when he attempted to visit Amy, Nancy denied him effective access to the child. He testified he is paying some support for Amy.

At the time of trial in January 1980, Don and Terri lived in Muscatine where he worked as a shop manager for a farm equipment dealer. Nancy continues to live in Centerville.

In her answer to plaintiff's petition and in her testimony, Nancy stated she was willing to allow Don visitation with Amy in Nancy's home but that it was in Amy's best interests to so restrict visitation.

■ II. *Acknowledged natural father's right to visitation.* The court ruled that because Don had not married Nancy, he had no right of visitation with his illegitimate child. The court reasoned that the common law gave the father no rights or obligations in his illegitimate child. This common law was abrogated in Iowa by enactment in 1925 of what is now chapter 675, The Code 1979. 1925 Session, 41 G.A., ch. 81. This legislation obligated the parents of a child born out of wedlock to support the child; however, at the time of trial there had been no corresponding legislative enactment regarding such a parent's right of visitation.

This is our first occasion to consider whether the father of an illegitimate child has a right to visit the child.[1] Visitation is to be distinguished from custody and means the right to visit for short periods a child who is in the custody of another.

Other jurisdictions that have considered the question of a father's right to visit his illegitimate child have generally held that visitation should be allowed as long as it is in the best interests of the child. *Sullivan v. Bonafonte,* 172 Conn. 612, 376 A.2d 69

---

1. *Pratt v. Nitz,* 48 Iowa 33 (1878), involved our denial of a petition by the father of an illegiti-   mate child to obtain custody of the child.

(1977); *Mixon v. Mize*, 198 So.2d 373 (Fla. Dist.Ct.App.1967), *cert. denied*, 204 So.2d 211 (Fla.1967); *Phillips v. Horlander*, 535 S.W.2d 72 (Ky.1975); *Gardner v. Rothman*, 370 Mass. 79, 345 N.E.2d 370 (1976); *Pearson v. Clark*, 382 So.2d 482 (Miss.1980); *Commonwealth v. Rozanski*, 206 Pa.Super. 397, 213 A.2d 155, 15 A.L.R.3d 880 (1965); *J. M. S. v. H. A.*, —— W.Va. ——, 242 S.E.2d 696 (1978); Annot., 15 A.L.R.3d 887 (1967).

Visitation is not automatic. It is only to be granted after the court determines that it would be in the best interests of the child. An illegitimate child should ordinarily have the opportunity to receive the love and affection from a natural parent who does not have custody. The noncustodial parent should be allowed to visit to develop qualities in the child that the other parent is unable to develop. *Rozanski*, 206 Pa.Super. at 402, 213 A.2d at 157. Neither the fact of illegitimacy nor the personal preferences or prejudices of the parents should influence the decision of whether to allow visitation. *Phillips*, 535 S.W.2d at 73. As in this case, relations between the natural parents are often strained. While this might make it undesirable to have the parents meet in front of the child, a court "should not ignore the possibility that each can contribute individually to the child's welfare." *Rozanksi*, 206 Pa.Super. at 404, 213 A.2d at 158.

We note that our own legislature has decided that a parent without custody should have a chance to visit the child. The legislature recently provided a father of an illegitimate child an opportunity to petition for visitation after a judgment of paternity has been entered. 1980 Session, 68th G.A., ch. 1186, § 2. This amendment to chapter 675 will become effective on January 1, 1981. 1980 Session, 68th G.A., ch. 1186, § 4. We believe that a father who acknowledges paternity should have the same right to petition for visitation as one who has been adjudged the father in a paternity action.

Based on the above authorities, we hold that the acknowledged father of an illegitimate child has a right to visit the child upon his showing that it would be in the best interests of the child.

 III. *Best interests of child.* Our review in this habeas corpus case to determine the best interests of the child is de novo. *Halstead v. Halstead*, 259 Iowa 526, 531, 144 N.W.2d 861, 864 (1966).

Don contends that it is in Amy's best interest to allow visitation. He had established a relationship with Amy in the three years that they lived together. She bears his name. He has been interested in seeing Amy and has set up visitation with her through his sister. It would be in Amy's best interest to continue to know her father as she grows up.

Don should be allowed reasonable visitation with Amy outside Nancy's home.

The case is reversed and remanded to the trial court to fix visitation, after hearing, in accordance with this opinion.

REVERSED AND REMANDED.