573 So.2d 61 (1990)
Thomas Allen KENT, Appellant,
v.
Jayne Bumpers BURDICK and Laurence Burdick, Appellees.
No. 90-916.
District Court of Appeal of Florida, First District.
December 27, 1990.
*62 Lacy Mahon, Jr. of Lacy Mahon, Jr., and Mark H. Mahon, P.A., Jacksonville, for appellant.
Frank M. Scruby, Orange Park, for appellees.
ZEHMER, Judge.
Thomas Kent appeals an amended final judgment denying his motion to establish visitation rights with his daughter, A.J.B. We reverse and remand for further proceedings on the issue of visitation.
Jayne Burdick and Laurence Burdick were married in April 1980 and divorced in April 1986. Shortly after the divorce, Jayne Burdick and Kent lived together, during which time she became pregnant with A.J.B. By December 1986, Jayne Burdick terminated her relationship with Kent and remarried Laurence Burdick, being fully aware that she was pregnant with Kent's child. Laurence Burdick provided his wife with constant support during her pregnancy and after the birth of the child, and he considered A.J.B. his own daughter. Kent, on the other hand, neither financially supported A.J.B. nor offered to provide any support for her. Prior to his suit to establish paternity and visitation rights, Kent had not visited the child nor been able to discuss such visitation with Jayne Burdick. He made several attempts to contact Jayne Burdick, however, and it appears that she intended to preclude him from having any relationship with the child.
In December 1987, Kent filed a complaint against the Burdicks to establish that he was the father of A.J.B. The complaint requested shared parental responsibility, visitation rights, and change of A.J.B.'s surname to "Kent." The Burdicks filed an answer admitting that Kent was A.J.B.'s natural father and a counterclaim for stepparent adoption by Laurence Burdick. The circuit court subsequently entered a partial summary judgment for Kent on the paternity issue. However, the court entered a final judgment granting the Burdicks' counterclaim for stepparent adoption. After commenting that Kent objected to the adoption and that neither abandonment nor legal excuse nor lack of consent was pleaded by the Burdicks, the judgment further recited in part:
Of course, in view of this judgment granting the adoption those issues [name change and visitation] are moot in any event, but this court wants to make it clear that even had the adoption been denied it would not have granted Allen Kent visitation with [A.J.B.], nor would it have changed [A.J.B.'s] surname.
There was no other provision in the decretal portion of the judgment specifically ruling on the name change or visitation issue. The decretal portion of the judgment simply granted the adoption of A.J.B. by Laurence Burdick, terminated all of Kent's parental rights, and provided that the "affidavit of paternity filed by Allen Kent with the vital statistics office of the Department of Health and Rehabilitative Services is hereby ordered to be stricken from the records and removed and expunged therefrom." The obvious intent of the judgment was to remove all traces of any relationship between Kent and his daughter, A.J.B.
Kent appealed the judgment granting adoption and this court reversed, holding that the circuit court erred in ruling that Kent's consent was not required under the adoption statute, section 63.062(1)(b), Florida Statutes. In the Interest of A.J.B., 548 So.2d 906 (Fla. 1st DCA 1989). On remand, Kent moved the circuit court to enter final judgment in conformity with this court's mandate and to establish his visitation rights. The circuit court thereupon entered an order denying the Burdicks' petition for adoption. The court then entered an amended final judgment adjudging (1) that A.J.B. maintain her present name and (2) that "Thomas Allen Kent shall not have the right to visit or be visited by [A.J.B.]," reciting further:
Kent did not appeal the denial of visitation nor did he appeal the denial of his request to change [A.J.B.'s] surname. Therefore, those issues having been decided by this court's Final Judgment dated November 21, 1988 became the law of the case and will not be revisited. Marine Midland Bank Central v. Cote, 384 So.2d 658 (Fla. 5th DCA 1980).
*63 Kent now appeals this amended judgment, contending that the court erred in denying him visitation with A.J.B. without an evidentiary hearing on the motion after remand. He argues that the final judgment did not constitute a final ruling on his rights to visitation[1] and that the comments regarding denial of visitation recited in the first judgment, in view of the termination of his parental rights, were nothing more than mere dicta, which cannot be given res judicata effect. He argues that he is entitled to visitation because he has been legally declared to be the natural father of A.J.B. and, further, that the Burdicks have admitted, and the lower court has found, that he has not abandoned his child. On the contrary, he contends, the record shows that he has made extensive efforts, including the filing of this legal paternity suit, to establish his parental interest in his daughter, A.J.B., and his right to participate in her life. He further relies on the public policy of this state to encourage visitation between parents and minor children and says there is no evidence that he has ever committed any harmful act against A.J.B.
The Burdicks respond that the visitation issue was decided adversely to Kent in the previously appealed judgment, that he failed to contest that ruling on the first appeal, and thus it is now res judicata. They further argue that it is clear from the evidence in this record that Kent did not carry his burden of showing the right to have visitation with his daughter.
We do not agree that the prior judgment became res judicata on the issue of visitation and operated to preclude Kent from further litigating the visitation issue on remand from the prior appeal. The appealed judgment terminated his parental rights and permitted adoption of his child. Having thus terminated Kent's parental rights, all issues regarding visitation became moot and of no consequence. Kent's first appeal was focused solely on the Final Judgment of Adoption, which had terminated Kent's parental rights, and did not specifically pass on the moot visitation issue. The proceedings below and the Final Judgment of Adoption primarily addressed the Burdicks' petition for adoption, and as the lower court noted in that judgment, Kent had assumed that visitation was his natural right if the adoption petition was denied and, therefore, presented no evidence concerning whether visitation with him would be in A.J.B.'s best interest. Since this court reversed the adoption, Kent was not precluded from thereafter enforcing, on remand, his visitation rights and having the trial court determine whether visitation with him would be detrimental to A.J.B.'s welfare based on Jayne Burdick's objections.
The United States Supreme Court has held that a natural father, absent a finding that he is unfit, has a due process right to maintain a parental relationship with his children. Ouilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978); Stanley v. Illinois, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972). Since 1967, Florida courts have recognized that a putative father also has that right with respect to his illegitimate children. Mixon v. Mize, 198 So.2d 373 (Fla. 1st DCA 1967). In Mixon, this court held that "where a putative father acknowledges his relationship to an illegitimate child, manifests a genuine interest in the child's welfare and provides it with support, such father should be granted the right to visit the child at reasonable times unless such visits are shown to be detrimental to the child's welfare." [Emphasis added]. 198 So.2d at 375. Florida courts have also recognized that the shared responsibility statute, section 61.13, Florida Statutes (1989), applies to both legitimate and illegitimate children, and that fathers of illegitimate children have the same rights with respect to their illegitimate children as legitimate fathers have with respect to their legitimate children, Collinsworth v. O'Connell, 508 So.2d 744, 746 (Fla. 1st DCA 1987); Brown v. Bray, 300 So.2d 668, *64 669 (Fla. 1974); Stepp v. Stepp, 520 So.2d 314 (Fla. 2d DCA 1988), unless those rights have been waived or legally terminated by a court. Section 61.13(2)(b)2.a provides, and Florida courts have held, that in custody proceedings a trial court must order that the parental responsibility for a minor child be shared, unless the court finds that shared parental responsibility would be detrimental to the child. Collinsworth v. O'Connell, supra. The burden of showing that shared parental responsibility would be detrimental to the child is on the person objecting to shared parental responsibility. Schackow, 2 Florida Family Law Practice Manual, Chapter 8, 14b (1976).
In cases where trial courts have denied or restricted a noncustodial parent's visitation rights in the absence of sufficient evidence that such visitation would be detrimental to the children's welfare, this court and other appellate courts have reversed and remanded with directions either to grant visitation or hold an evidentiary hearing to determine whether visitation would be detrimental to the children's welfare. For example, in Johnston v. Boram, 386 So.2d 1230 (Fla. 5th DCA 1980), where the trial court failed to provide visitation rights for a noncustodial mother in custody proceedings and there was no evidence in the record that visitation with the mother would adversely affect the children, the Fifth District Court of Appeal affirmed the award of custody to the father but remanded the case to the trial court for the entry of an order granting reasonable visitation with the mother. In Gavronsky v. Gavronsky, 403 So.2d 627, 627-628 (Fla. 1st DCA 1981), where the trial court placed various restrictions on a father regarding visitation with his child and the record of the dissolution proceeding lacked evidentiary support regarding the need for those restrictions, this court, noting that the record must support the necessity for any visitation restrictions, reversed the portion of the trial court's order relating to visitation and remanded the case for further proceedings on the issue of visitation.
The evidence in this record is insufficient to require that all visitation with Kent be denied as detrimental to A.J.B.'s welfare. There was evidence that Kent had not visited A.J.B. since her birth; however, as this court noted in its opinion on the first appeal, Kent made several attempts to contact Jayne Burdick during her pregnancy and after A.J.B.'s birth, but to no avail, and the evidence shows that the Burdicks intended to preclude Kent from having any contact and relationship with A.J.B. There was evidence that Kent did not financially support Jayne Burdick during her pregnancy or support A.J.B. thereafter; but Kent contends, and Jayne Burdick testified, that Kent was financially unable to support her during her pregnancy. The evidence also shows that after the pregnancy, Jayne Burdick did not request financial assistance from Kent for the support of A.J.B. Moreover, Kent's inability to support his child would not alone have justified the lower court's denial of his visitation rights without an initial determination or other evidence that visitation with him would be detrimental to A.J.B.'s welfare. See Balas v. Balas, 521 So.2d 343, 344 (Fla. 2d DCA 1988) (financial inability to pay child support is an invalid reason for terminating a parent's visitation rights); In the Interest of D.F.W. Jr., 497 So.2d 925, 926 (Fla. 5th DCA 1986) (the father's duty to pay child support and his right to visit his child should not be confused or commingled).
There was evidence that Kent has never personally cared for a very young child and has never changed a child's diaper. However, there was also testimony that Kent requested that visits with A.J.B. be in his mother's home, and Kent's mother, who had personally cared for young children, testified that she was willing to allow those visits in her home. The Burdicks point to evidence that Kent was once detained by police for following Jayne Burdick around town in his car, and that he had a series of business failures and financial difficulties. However, Kent's action in following her was the result of his unsuccessful attempts to contact her and serves to demonstrate his interest in his child. In French v. French, 452 So.2d 647, 649 (Fla. 4th DCA 1984), the court held that a parent may not be deprived of the right to visit his child merely because he engaged in conduct that *65 a trial court considers morally reprehensible or otherwise objectionable; there must be an affirmative showing by competent, substantial evidence of detriment to the child.
Finally, a child psychologist hired by the Burdicks had testified at the hearing resulting in the appealed judgment granting adoption that, as a result of personality tests and his interviews with the Burdicks, he felt that the adoption would be in A.J.B.'s welfare. However, prior to the hearing, the psychologist had not interviewed Kent, and at the hearing, the psychologist did not testify whether, if the adoption petition were denied, visitation with Kent would be detrimental to A.J.B.'s welfare.
As the objecting party, the Burdicks had the burden of proving that any visitation with Kent would be seriously detrimental to A.J.B. This evidence does not constitute a legally sufficient basis upon which the trial court could deny Kent all visitation rights without according a further evidentiary hearing at which both Kent and the Burdicks can present evidence. The appealed order is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
SHIVERS, C.J., and JOANOS, J., concur.
NOTES
[1] Kent makes no argument on this appeal concerning the name change issue and we do not review that issue.