**Jeffrey David WILSON, Appellee,**

v.

**Sharon Lea ARNESON, Appellant.**

No. 90–1440.

Court of Appeals of Iowa.

April 23, 1991.

John R. Walker, Jr. of Beecher, Rathert, Field, Fister, Walker & Morris, Waterloo, for appellant.

L. Don Snow of Reed–Merner and Mershon, Snow & Knock, Cedar Falls, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

PER CURIAM.

Lindsay Nicole Arneson was born in September 1986. Her natural parents are Sharon Arneson and Jeffrey Wilson. Each was married to another person at the time of Lindsay's conception and birth. Sharon's husband was biologically unable to have children, and all parties agree that Jeffrey Wilson is Lindsay's natural father.

Jeffrey Wilson had no contact with Lindsay for more than three years after her birth.

Sharon Arneson became an ADC recipient after her marriage was dissolved. Because of her receipt of benefits, the Department of Human Services filed a petition against Jeffrey Wilson under Iowa Code chapter 252A seeking an adjudication of paternity and an award of child support. In September 1989 the district court entered an order finding Jeffrey Wilson to be the child's father and directing him to pay child support.

Shortly after the child support order, Jeffrey Wilson filed the present petition in equity asking for visitation with Lindsay. After a hearing, the district court granted him visitation from Friday evening to Sunday evening on alternating weekends, following a three-month transition period when Lindsay is to be introduced gradually to Jeffrey and his family. The district court noted Lindsay is not yet aware Jeffrey is her father, and the court expressed concern she might suffer a psychological trauma from learning that fact. However, the court predicted she will inevitably learn that fact at some point, and the court expressed the hope visitation at the present time will make this discovery less traumatic in the long run.

Sharon has appealed the court order granting Jeffrey visitation. She contends visitation with Jeffrey is not in Lindsay's best interest. She notes Jeffrey had no contact with Lindsay until after he was directed to pay child support. She also notes Lindsay still believes Sharon's ex-husband to be her father, and she expresses concern visitation with a stranger will traumatize Lindsay. In addition, Sharon expresses concern Lindsay may not be safe in the care of Jeffrey's wife. Sharon asserts Jeffrey's wife resents her affair with Jeffrey and has made harassing phone calls to her in the past.

Our review of this equity action is de novo. Iowa R.App.P. 4.

We determine our ruling in this case is controlled by the Iowa Supreme Court's holding in *Gay v. Cairns*, 298 N.W.2d 313 (Iowa 1980). In that case the supreme court held the father of an illegitimate child who has acknowledged paternity has a right to visit the child as long as visitation is in the child's best interests. *Id.* at 315. Although paternity was established in this case through court action, the controlling consideration is the best interests of the child.

**900**

We determine it in the best interests of Lindsay to have visitation with her natural father. She will undoubtedly discover in the future the facts of her birth. She should be afforded the opportunity at an early age to make the acquaintance of her natural father. Such an acquaintance and the accompanying friendship and support can be very nurturing for Lindsay. This early introduction, while perhaps initially unsettling, in the long run will ease the child's transition into knowledge of her origins. It may avoid some of the long-term ill effects of not revealing the facts of her origin and her biological father.

We approve of the trial court's ease-in period of three months with two hours of visitation every other weekend. However, the later visitation of alternating full weekends is excessive. This is especially true in light of the fact Lindsay already has alternating weekend visitation with Sharon's ex-husband. The evidence shows Sharon's ex-husband and Lindsay enjoy a warm and friendly relationship. She apparently views him as her father. While Sharon's ex-husband may not be her father-in-fact, he has assumed that place in her life and acts accordingly. We note he does not provide financial support for Lindsay.

Alternating weekend visitation to the natural father and also to the ex-husband would not allow Sharon any weekend time with her daughter. The dissolution decree is not before us and we have no authority to modify the ex-husband's visitation. Additionally, we seek to preserve that relationship.

Jeffrey had shown no interest in Lindsay until the Department of Human Services Child Support Recovery Unit filed an action to compel him to pay support. Also we are concerned about Lindsay's interaction with Jeffrey's family.

We modify the trial court's ruling to allow Jeffrey visitation from 9 a.m. Saturday morning until 5 p.m. Saturday evening on alternating weekends. These visits shall commence following the three months ease-in period set up by the district court. We make no provision for overnight visita-

tion at this time. Jeffrey will be responsible for all transportation.

We affirm the trial court on all other issues.

AFFIRMED AS MODIFIED.