591 So.2d 994 (1991)
Thomas Allen KENT, Appellant,
v.
Jayne Bumpers BURDICK and Laurence Burdick, Appellees.
No. 91-1944.
District Court of Appeal of Florida, First District.
December 17, 1991.
*995 Lacy Mahon, Jr. of Mahon & Mahon, P.A., Jacksonville, for appellant.
Frank M. Scruby, Orange Park, for appellees.
KAHN, Judge.
Thomas Allen Kent appeals a final order granting visitation with his minor daughter. We reverse the trial court's order granting visitation because the restrictions in the order deny appellant of his due process right to maintain a parental relationship with his child.
The natural mother, Jayne Burdick, and her husband, Larry Burdick, initially were married in 1980 and divorced in 1986. Shortly thereafter, Mrs. Burdick and Mr. Thomas Allen Kent lived together for a few months, during which time Mrs. Burdick became pregnant with A.J.B. However, by December 1986, she had terminated her relationship with Mr. Kent and had remarried Mr. Burdick, with Mr. Burdick being fully aware that she was pregnant with Mr. Kent's child. Within 45 days of the child's birth, appellant filed a complaint in Duval County to determine paternity. The complaint was dismissed upon the natural mother's plea of privilege.
The mother and her husband believe appellant should have no parental rights and have avoided any contact with appellant. They even ignored the recommendation of their own psychologist that Mr. Kent be allowed to see his daughter. The natural mother stated that she would not be agreeable to visitation in any shape, form or fashion. Her husband likewise testified that he would not allow even 10 minutes a month visitation.
Appellant filed another complaint in Clay County to establish paternity and to obtain shared parental responsibility, visitation, and a change of the child's surname to Kent. As a counterclaim to appellant's suit, the Burdicks filed for stepparent adoption which the court awarded without the biological father's consent.
In Mr. Kent's first appeal, In the Interest of A.J.B., 548 So.2d 906 (Fla. 1st DCA 1989), this court reversed the lower court's order of adoption, finding that the trial court erred in determining that the natural father's consent was not required under § 63.062(1)(b), Florida Statutes, for stepparent adoption in this case.
*996 On remand, the trial court denied visitation based on its previously reversed order granting adoption. In Kent v. Burdick, 573 So.2d 61 (Fla. 1st DCA 1990), this court reversed the lower court's order denying visitation and remanded the cause for an evidentiary hearing to determine whether the natural father's visitation would be detrimental to the child. As this court in Kent, 573 So.2d at 63-64, stated:
The United States Supreme Court has held that a natural father, absent a finding that he is unfit, has a due process right to maintain a parental relationship with his children. Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978); Stanley v. Illinois, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972). Since 1967, Florida courts have recognized that a putative father also has the right with respect to his illegitimate children. Mixon v. Mize, 198 So.2d 373 (Fla. 1st DCA 1967). In Mixon, this court held that `where a putative father acknowledges his relationship to an illegitimate child, manifests a genuine interest in the child's welfare and provides it with support, such father should be granted the right to visit the child at reasonable times unless such visits are shown to be detrimental to the child's welfare.' (Emphasis added in Kent) 198 So.2d at 375. Florida courts have also recognized that the shared responsibility statute, section 61.13, Florida Statutes (1989), applies to both legitimate and illegitimate children, and that fathers of illegitimate children have the same rights with respect to their illegitimate children as legitimate fathers have with respect to their legitimate children ... unless those rights have been waived or legally terminated by a court. Section 61.13(2)(b)2.a provides, and Florida courts have held, that in custody proceedings a trial court must order that the parental responsibility for a minor child be shared, unless the court finds that shared parental responsibility would be detrimental to the child... . The burden of showing that shared parental responsibility would be detrimental to the child is on the person objecting to shared parental responsibility. (citations omitted)
Despite this court's strong suggestion that visitation would be required, the Burdicks refused to mediate the issue. After a hearing, the lower court allowed visitation but restricted the visits to four hours a month, to take place at Mrs. Burdick's home in Stuart, and enjoined all the parties from informing the little girl that appellant is her biological father.
The trial court's order granting visitation denies appellant his due process right to maintain a parental relationship with his child by enjoining him from telling his daughter that he is her biological father and restricting his visitation to four hours a month. See, Kent v. Burdick, 573 So.2d at 63; Quilloin v. Walcott, 434 U.S. at 255, 98 S.Ct. at 554; Stanley v. Illinois, 405 U.S. at 649, 92 S.Ct. at 1211. The order stated that the court's intention is "depending on the circumstances, to expand both the length, location and terms of visitation so long as the psychological impacts on the child are minimized." Although the court indicated this is only an introductory step in establishing a normal parental relationship, nonetheless the court failed to establish a plan that would lead to such a relationship. While according the lower court broad discretion, we cannot overlook the basic proposition that a parent has a natural legal right to enjoy the custody, fellowship and companionship of his offspring. The only limitation to this rule of parental privilege is that between parent and child, the ultimate welfare of the child must be controlling. To hold otherwise would permit improper government interference with the rights of natural parents who are found fit to raise their children. See In re Guardianship of D.A. McW., 429 So.2d 699 (Fla. 4th DCA 1983), approved, 460 So.2d 368 (Fla. 1984); Sparks v. Reeves, 97 So.2d 18 (Fla. 1957); In re Guardianship of Wilkes, 501 So.2d 704 (Fla. 2d DCA 1987); Paul v. Lusco, 530 So.2d 362 (Fla. 2d DCA 1988). Significantly, the Burdicks' evidence does not even remotely suggest unfitness on the part of Mr. Kent.
*997 Our sister court, in Goodman v. Goodman, 571 So.2d 23 (Fla. 2d DCA 1990), held that "a trial court has broad discretion to limit visitation as may be necessary to protect the welfare of the children; however, its decision to impose restrictions on visitation must be supported by some evidence in the record showing that such restrictions are necessary." In the instant case, two psychologists testified that disclosing to appellant's four-year-old child that she has a biological father different from her psychological father would be detrimental to the child. However, their testimony does not constitute competent, substantial evidence of detriment to the child. Neither of the psychologists ever met with Mr. Thomas Allen Kent, the natural father, and neither testified regarding his fitness as a father. One psychologist had met the natural mother and her husband for the first time on the way to the hearing and had never met the child. The other psychologist had known the mother, stepfather and child for several years; however, he admitted that he originally advised the natural mother four years earlier that the natural father should have access to the child. The psychologists indicate that the child would not be able to understand the concept of having two fathers; however, they ignore the large number of families that do have stepparent situations.
Both psychologists based their opinion that visitation by the natural father will be detrimental to the child solely on the fact that the child never knew she had a biological father different from her psychological father or stepfather. These witnesses gave the same rationale for urging that Mr. Kent's identity as the father be shielded from the child. However, the mother and stepfather refused to allow the biological father any access to the child and deliberately excluded him from any part in the child's life. They cannot now be allowed to contend that based on Mr. Kent's lack of contact with the child, he should be denied meaningful visitation and identification by the child as her natural father.
The trial court and the Burdicks also fail to consider the consequences to the child in the event that the natural mother meets an untimely death or is otherwise rendered unable to care for the child. The natural father is usually given custody of the child over a third party unless the natural parent is found to be unfit. See In re Guardianship of D.A. McW., supra (natural father given custody of his three-year-old son over maternal grandmother even though grandmother was more mature and child had lived all of his life with his mother prior to her death at the residence of the maternal grandmother); Sparks v. Reeves, supra (court awarded custody to natural father although maternal grandparents have provided for the children since they were babies); In re Guardianship of Wilkes, supra (natural father given custody of illegitimate child over child's maternal aunt and her husband although the father never lived with the child while the aunt and her husband took the mother and child in for the first 10 months of the child's life and continued to provide care for the child after the mother and child moved into an apartment); Paul v. Lusco, supra (natural mother rather than stepsister given custody of minor).
Here, appellant is not even seeking custody, but wishes only to visit with his child and establish a normal father/daughter relationship with her. The lower court deprived appellant of that due process right by prohibiting him from informing the child that he is her father and by limiting visitation to four hours a month in the mother's home without any schedule for review to increase visitation. What the court awarded was something less than meaningful visitation capable of fostering a healthy relationship between father and child contemplated in this court's prior opinion. Appellant has to go in under a condition of anonymity and somehow attempt to establish a relationship with his daughter in four hour sessions, punctuated by thirty day interludes with no contact. Although the lower court's establishment of a brief introductory period was not in itself an abuse of discretion, the court should have established a meaningful schedule for expansion of visitation rights, the removal of the condition of anonymity and the establishment *998 of a normal father/daughter relationship. The natural father should not have to go back to court every step of the way before he can establish normal relations with his daughter.[1] This is especially true where the father has struggled for over four years and through numerous court proceedings just to see his daughter. Accordingly, we reverse the lower court's order and remand the cause with directions to the lower court to allow Mr. Kent to tell his daughter that he is her father and to increase visitation such that the father can establish a meaningful parental relationship with the child.
JOANOS, C.J., and ZEHMER, J., concur.
NOTES
[1] Sadly to say, we take the Burdicks' testimony as fairly strong evidence that they will not accommodate mutually agreeable visitation on a voluntary basis.