633 So.2d 494 (1994)
Ronad McALISTER, Appellant,
v.
Wanda L. SHAVER, Appellee.
No. 92-2960.
District Court of Appeal of Florida, Fifth District.
March 4, 1994.
*495 Charles E. Gordon, Winter Park, for appellant.
Robert A. DuChemin of DuChemin & DuChemin, P.A., Orlando, for appellee.
EN BANC
PETERSON, Judge.
Ronald A. McAlister appeals a final order denying his petition to modify a final judgment of dissolution of his marriage to Wanda L. Shaver to provide for reasonable and specific visitation with his four-year-old daughter. We reverse and remand for further proceedings.
The parties were married on September 9, 1988 but separated just three months later. In early February, 1989, Wanda filed her petition for dissolution of marriage alleging that she was pregnant and expected to deliver the parties' child in late June. At first, Ronald denied that he was the father of the child, but, after the child was born, the parties entered into a marital settlement agreement which required Ronald to pay $119.14 per month child support until the child's emancipation. It also required Ronald to pay the medical expenses Wanda incurred during her pregnancy which were not covered by insurance. The agreement provided that Wanda would have sole parental responsibility and that she could change the surname of the expected child. The agreement was totally silent as to any visitation rights or waivers of visitation.
On August 8, 1990 the court entered a judgment of dissolution which incorporated by reference the terms of the settlement agreement. The terms of the child support were specifically repeated in the judgment, but, like the settlement agreement, the judgment did not address the issue of visitation. Ronald later testified that on several occasions he did ask his lawyer about visitation rights but was told not to worry; he would have visitation rights.[1] He testified that he *496 attempted to see his child by visiting Wanda's residence several months after the child was born and again several months after the first effort. Wanda would not allow access to her home or to the child either time. Ronald briefly saw the child only on two occasions, once through the door of Wanda's residence as she was closing it and by chance when he saw Wanda and the child walk in front of his car as he waited in line at the drive-in window of a fast food restaurant.
Finally, in April, 1992, Ronald filed a Supplemental Petition for Modification. In this petition, Ronald alleged the final judgment awarded his former wife "sole parental responsibility without addressing [his] visitation rights and the best interest of the child." Ronald asked for an order modifying the final judgment to provide for shared parenting and specific and reasonable visitation. Ronald also prayed for attorney's fees and an award of other relief the "court deems just and proper under the circumstances." The trial court denied modification after Ronald presented his case-in-chief finding that no change of circumstances was shown to have occurred between the time of the final judgment and the modification hearing. Subsequently the court entered a final judgment denying the petition. In this appeal Ronald asserts the trial court erred in denying his "modification" petition in which he sought specific and reasonable visitation rights, where the original judgment of dissolution failed to mention visitation at all.
We address first, generally, a parent's right of visitation. A parent has a constitutionally protected "inherent right to a meaningful relationship with his children." Schutz v. Schutz, 581 So.2d 1290, 1293 (Fla. 1991). It is a basic proposition that a parent has a natural legal right to enjoy the custody, fellowship and companionship of an offspring. Kent v. Burdick, 591 So.2d 994, 996 (Fla. 1st DCA 1991). The only limitation to this rule of parental privilege is that between parent and child, the ultimate welfare of the child must be controlling. Id. Visitation with a child should never be denied as long as the visiting parent conducts himself or herself, while in the presence of the child, in a manner which will not adversely affect the child's morals or welfare. Yandell v. Yandell, 39 So.2d 554, 555 (Fla. 1949).
Section 61.13(2)(b)2.b requires that in a dissolution proceeding a "court shall order `sole parental responsibility, with or without visitation rights, to the other parent when it is in the best interests' of the minor child." It is the duty of a trial judge to consider the relationships between parents and child in a dissolution action and to address visitation rights in an order when sole parental responsibility is awarded. § 61.13(2)(b)2.b, Fla. Stat. (1991). The court's responsibility to the child cannot be abdicated to any parent or expert. A court is not bound by any agreement between parents. Lane v. Lane, 599 So.2d 218, 219 (Fla. 4th DCA 1992); Bolton v. Gordon, 201 So.2d 754 (Fla. 4th DCA 1967); Sedell v. Sedell, 100 So.2d 639 (Fla. 1st DCA 1958). A trial court has the authority to decline to follow a settlement agreement between the parties relating to child custody, visitation, and support. Holland v. Holland, 458 So.2d 81 (Fla. 5th DCA 1984).
In Johnston v. Boram, 386 So.2d 1230 (Fla. 5th DCA 1980), the mother appealed a final judgment of dissolution awarding custody of her two minor children to their father and failing to award any visitation to her. The custody award to the father was affirmed, but the matter was remanded to the trial court for an order granting reasonable visitation rights to the mother. In doing so, this court held that:
[t]he noncustodial parent should be granted reasonable visitation with a child unless there is proof of extreme circumstances, or the trial court finds that the visitation will adversely affect the welfare of the child. Chaffin v. Grigsby, 293 So.2d 404 (Fla. 4th DCA 1974).
Johnston at 1230.
Having noted that Ronald had an inherent right as a parent to a meaningful relationship with his child through visitation and that a trial court has the obligation to consider the right of visitation in light of the child's best *497 interests, we turn now to the manner in which Ronald sought his inherent right of visitation after failing to appeal the original judgment of dissolution. Ronald attempted to gain visitation by filing a "Supplemental Petition for Modification" two years after the original judgment was entered. Ronald contended that, based upon his attorney's advice, he expected to have visitation rights after the final judgment of dissolution. He argued that the denial of visitation subsequent to the entry of judgment was a change in circumstances because he had expected to be able to visit when the final judgment was silent on the matter.
We agree with the trial court that Ronald's unilateral expectations of visitation could not form the basis of the substantial change of circumstances required to be shown in order to satisfy the extraordinary burden in modification proceedings. Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984); see also McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982). The trial court erred, however, in not correcting the original final judgment's failure to address visitation. Although the husband's petition was termed a petition for modification, the focus of the proceeding was on the original court's failure to address Ronald's right of visitation. The court should have corrected this omission by making an initial determination of the father's visitation rights. See Evans v. Evans, 595 So.2d 988, 990 (Fla. 1st DCA 1992) (where original final judgment contained no child support award, and husband in modification proceeding raised issue of this omission, court should have looked at modification petition as initial petition for support).
The mother's answer concedes that the original judgment failed to address the important issue of visitation and the mother never argued that Ronald's request for visitation was barred by the doctrine of res judicata. Further, even if she had raised the affirmative defense of res judicata pursuant to Rule 1.110(d), Florida Rules of Civil Procedure, it is doubtful that the doctrine would have applied in this case with respect to the visitation question. A dissolution action involving the parents' rights and responsibilities vis a vis their children is unlike a tort or contract action where a party that does not raise particular causes of action or defenses is barred from raising them in a subsequent suit. Section 61.13 imposes an affirmative duty to declare the parties' child support obligations and custody and visitation rights. Where a court fails to address such matters in the final judgment it is questionable whether such matters are finally adjudicated because they "might have been presented and determined in the first suit." Reynolds v. Reynolds, 117 So.2d 16, 20 (Fla. 1st DCA 1959).
In the judgment of dissolution when the court ordered "sole parental responsibility" to the mother without addressing the visitation rights of the noncustodial father, it acted in contravention of section 61.13(2)(b)2.b, Florida Statutes, which directs a court to "order `sole parental responsibility, with or without visitation rights, to the other parent when it is in the best interests of' the minor child." Because no determination has yet been made as to the father's visitation rights, we remand the case to the trial court for an initial determination of this sole issue. On remand the trial court shall give the parties an opportunity to present evidence as to the best interests of the child. We also suggest but do not require that the trial court appoint a guardian ad litem to represent the child's interest in this matter. Section 61.401, Fla. Stat. (1993); see Cortina v. Cortina, 108 So.2d 63 (Fla. 2d DCA 1958).
REVERSED; REMANDED.
HARRIS, C.J., and DAUKSCH, COBB, W. SHARP, GOSHORN and DIAMANTIS, JJ., concur.
THOMPSON, J., dissents with opinion, in which GRIFFIN, J., concurs.
THOMPSON, Judge, dissenting
I respectfully dissent.
There are three reasons for my dissent: 1) there was no procedural error in the ruling by the trial judge at the modification hearing; 2) this court is requiring written findings for a determination of visitation when none are required by section 61.13(2)(b)2.b, *498 Florida Statutes (1991); and, 3) McAlister is seeking to use the modification hearing as a belated appeal.

ADDITIONAL FACTS
In order to fully develop the events that support the reasons for my dissent, I add these additional facts to show the historical development of this case. So that there will be no attempt at judicial petit theft, i.e. taking portions of the trial record out of context, the trial record will be quoted extensively. McAlister and Shaver were married on 9 September 1988. They separated on 30 November 1988 and never lived together after that date. In paragraph "5." of her petition for dissolution of marriage filed on 6 February 1989, Shaver alleged:
No children have been born of this marriage, however, one is expected. The Wife is currently pregnant and expects to deliver a child on or about June 24, 1989. The Husband is the father of said expected child. Wife is a fit and proper person for taking full responsibility for the child, and it will be in the best interest of the child that its primary physical residence be with the Wife. Shared parental responsibility would be detrimental to the child because the Husband has disassociated himself from the Wife during her pregnancy and has little or no contact with her (emphasis supplied). Husband has not called or inquired as to the pregnancy or the well being of the Wife or fetus. Shared parental responsibility would result in Wife having to "confer" as to "major decisions affecting the welfare of the child" with an individual who has neither the desire nor the capacity to determine what is in the best interest of the child.
McAlister filed his answer on 6 March 1989 and responded to paragraph "5." of McAlister's petition. He wrote in paragraph "3." of his answer:
Admits the allegations contained in paragraph 5 as to Wife being pregnant but denies the remainder of said paragraph.
He denied that he was the father of the child. He expounded on this denial in his counter petition filed on 10 March 1989. In paragraph "5." he wrote:
There have been no children born of this marriage, however the Petitioner/Counter Respondent is pregnant but the Husband is not the Father of the unborn child (emphasis supplied).
Shaver responded in her answer and affirmative defenses filed on 17 March 1989:
1. The Petitioner is pregnant and expects to deliver a child on June 24, 1989 and the period of human gestation is 280 days, therefore conception occurred subsequent to the marriage of the parties raising the presumption that the Respondent is the father.
2. The Respondent, RONALD A. McALISTER, moved in with the Petitioner on or about July 31, 1988 and from that date until the parties separated on or about November 30, 1989 [sic], the parties hereto had frequent acts of sexual intercourse.
3. During the months of July, August, September, October, November and December, 1989 [sic], the Petitioner did not have sexual intercourse with any person other than Respondent.
There were no other actions taken until after the child was born in July of 1989. After the child, B.N.M., was born, Shaver filed an amended petition for dissolution of marriage. She alleged the general prayer for relief, but she specifically brought several matters to the attention of the trial judge. First, that the child had lived with Shaver since birth and second, that there was a marital settlement agreement that resolved all of the issues between the two parties including "sole parental responsibility, primary physical residence, child support and all issues of property settlement." She asked that the court incorporate "by reference into the Final Judgment the terms of the Marital Settlement Agreement giving full force and effect to said Agreement."
McAlister accepted the terms of Shaver's amended petition on 17 July 1990 by his answer and:
his waiver of all notice of the final hearing in this cause, and submitting to the personal jurisdiction of this Court. The Husband *499 enters his general admission to the Petition and requests this Court to grant the Petition for Dissolution of Marriage and enter a Final Judgment of Dissolution of Marriage which incorporates the parties' Marital Settlement Agreement (emphasis supplied).
The final judgment was signed and filed on 8 August 1990. The marital settlement agreement was incorporated by reference into the final judgment "as if fully set forth herein." Approximately two years later, on 1 May 1992, McAlister filed a supplemental petition for modification of the final judgment. He alleged that the final judgment did not address the issue of visitation. He requested "shared parenting and specific, reasonable, and liberal" visitation with the minor child "B.N.M. (d/o/b 7-3-89)" since it was in her best interest.[1]
Shaver responded on 21 May 1992 and denied the allegations that visitation would be in the best interest of the child. She went on to state:
5. The minor child, B.N.S., was born on July 2, 1989. The child is now nearly three years old and the former husband has never made any real attempt to visit the child. In October of 1991 the former wife indicated by letter to former husband's attorney, that she was willing, at that time, to initiate some limited and supervised visitation, however, the former husband neglected to respond. At this late date, the child has no recollection of her father and to impose visitation on the minor child at this time would not be in her best interest. The former husband has failed to timely pursue visitation, permitted the child's name to be changed, and should not now be allowed to visit the child.
6. The former husband has failed to comply with the terms of the Marital Settlement Agreement entered by the parties and incorporated in the Court's Final Judgment of Dissolution of Marriage in the following:
a. The former husband has failed to pay child support payments on a regular basis as ordered by this court; and
b. The former husband has failed to pay the former wife's uncovered medical expenses, incurred due to the birth of the minor child, as contemplated in paragraph 7 of the Marital Settlement Agreement.
The case was set for hearing and an order denying the modification was entered. That order is the subject of this appeal.

THE TRIAL JUDGE MADE NO PROCEDURAL ERROR
In order for the trial court to change or modify the prior custody and visitation award, the noncustodial parent seeking to modify the award "carries an extraordinary burden" and must rely only on changes that have occurred after the entry of the original final judgment of dissolution since that judgment is res judicata as to all other matters involved in the case at that time. Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). McAlister testified of no changes that had occurred since the entry of the final judgment. He testified that he had tried to visit on two occasions; once prior to the entry of the final judgment and once after. Shaver closed the door in his face on both occasions. He had not tried to visit his daughter in the two years subsequent to his second attempt to visit. He presented no other evidence and no additional testimony. Although he could have called his former attorney, who told him not to worry about visitation, as a witness, he did not. He could have called the attorney who represented Shaver in the dissolution. He did not. In his own testimony, he did say that his prior attorney had told him not to worry about visitation even though it was not included in the agreement. This testimony is contradicted by express language in the agreement that "[t]here exist no representations or warranties other than those set forth herein." See Paragraph 21 of the agreement quoted below. Since the sole basis of the petition to change the judgment was McAlister's desire for visitation, the trial court was correct in denying his petition. There were *500 no substantial changes, therefore, there could be no modifications. McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982).
The appropriate standard of review for a modification of a custody or visitation order is not whether the trial court's decision is "reasonable," the standard from Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), but whether the decision is supported by "competent and substantial evidence," which is a stricter standard of review. Zediker, 444 So.2d at 1037-38. The trial court's ruling denying modification on the basis that no substantial change in circumstances had been shown is supported by competent and substantial evidence and, therefore, must be affirmed.
In attempting to have this court apply the Canakaris reasonableness standard of review rather than the Zediker competent and substantial evidence standard, Shaver argues, McAlister actually seeks an initial determination of visitation rights rather than a modification. In so doing, Shaver indirectly raises a novel argument on appeal: that the petition should be taken as an initial petition for visitation since the agreement incorporated into the final judgment did not address the issue of visitation. This argument lacks merit.
The agreement was signed by the parties after it was drafted and reviewed by their respective attorneys. It was, in fact, drafted by McAlister's attorney. The agreement is thorough and complete; covering 11 pages and 27 paragraphs. Did the parties mean it to be their full understanding of their relationship one to the other as it relates to the dissolution? Obviously, they did. Perhaps, the most telling evidence is the language of the agreement that was signed by the parties:
5. Pending or Imminent Action for Dissolution. The Wife has filed an action to dissolve the marital bonds of her marriage to the Husband in the Circuit Court of the Ninth Judicial Circuit of Florida... . This Agreement is intended to be a full and complete settlement of all matters arising or which could have been brought in that action, including a division of marital assets, provision for support of either Party, provision for the support and care of the Parties' minor children [sic], equitable distribution of the Parties' marital assets and debts, attorney's fees and all other issues raised by or in the Petition for Dissolution of Marriage filed by the Wife in the above-styled cause. This agreement is intended to be introduced into evidence in that dissolution of marriage action and to be incorporated in the Final Judgement of Dissolution of Marriage. However, the Parties do not intend for it to be merged in the Final Judgment. Rather, they wish it to survive the Judgment and be binding on the Parties for all time (emphasis supplied).
8. Sole Parental Responsibility. Sole parental responsibility for the minor child shall be awarded to the Wife (emphasis supplied).
19. Review and Assent. Each party fully understands the facts and terms of this Agreement and understands his or her legal rights or obligations pursuant to the laws of Florida and this Agreement. Each party is signing this Agreement freely and voluntarily, intending to be bound by it (emphasis supplied). Each party recognizes that each provision of this Agreement may be enforced by the contempt powers of the Court.
21. Full Agreement. Each party agrees that this Agreement constitutes the entire marital settlement agreement of the parties. This Agreement supersedes any prior understandings or agreements between them, whether or not the matters were covered in this Agreement. This Agreement also supersedes any prior orders of this Court, insofar as the parties' respective rights of enforcement thereunder are concerned. There exist no representations or warranties other than those set forth herein. The parties acknowledge that this Agreement constitutes the full, complete and final settlement of all alimony rights, property rights, liabilities and other responsibilities by or between the parties. This Agreement is a full, complete and final settlement of all claims of any nature whatsoever that either party may have *501 against the other, now or in the future, except as expressly provided for herein (emphasis supplied throughout).
This court offers two reasons for allowing McAlister a hearing on visitation: 1) a parent's inherent right to visitation and 2) the trial court's error in not correcting the original judgment when it did not specifically mention visitation. The record clearly establishes that at the time of the entry of the final judgment, McAlister denied the child was his and accepted those portions of the marital settlement agreement that awarded Shaver sole parental responsibility. He waived appearance at the final hearing and never appealed or attempted to have the final judgment corrected to include the issue of visitation. The trial judge wrote, after the modification hearing, that McAlister had also allowed Shaver to change the child's last name from McAlister to Shaver. There is no evidence or testimony that the final judgment contained an error. It is clear that McAlister wanted nothing to do with the child including having the child take his last name. For these reasons, the trial judge's order should be affirmed because he made no procedural errors. There is competent evidence to support the ruling that McAlister waived visitation with the minor child. See Kent v. Burdick, 573 So.2d 61, 63 (Fla. 1st DCA 1990).

SECTION 61.13(2)(B)2.B DOES NOT REQUIRE WRITTEN FINDINGS
This court adopts the position that visitation is so important that it can not be waived in a marital settlement agreement unless the parties include a provision specifically addressing visitation. McAlister notes that the Florida legislature has modified the Florida Statutes to mandate frequent and continuing contact with both parents after the parents have separated or dissolved their marriage. Section 61.13(b)(1), Fla. Stat. (1991). The argument being advanced is that where a final judgment (or a marital settlement agreement incorporated into a final judgment) does not provide for visitation, the trial court has the responsibility to clarify the issue of visitation. See, e.g., Lane v. Lane, 599 So.2d 218 (Fla. 4th DCA 1992). Unfortunately, this court never provides authority for the proposition that an agreement that was the result of negotiations between the parties; that was entered into freely and voluntarily without any evidence presented that it was the result of overreaching, fraud or duress; that was signed by both parties, each of whom was represented by an attorney; and that was accepted without an attempt at modification, until two years after it was entered, can be revisited to include a provision for visitation.
Additionally, this novel position implies that a trial judge can not accept a marital settlement agreement that includes sole parental responsibility with no mention of visitation, but the trial judge must have a contested hearing to make such a determination. This implication is neither accurate nor is it logical. Section 61.13(2)(b)(2)2.b allows a judge to determine if shared parental responsibility is in the best interest of the child. If it is not, then sole parental responsibility is to be ordered. This fact is one the court can find at a contested hearing or the parties can stipulate to in an agreement. The same is true for visitation. Just as the court can decline to accept a marital settlement agreement because the terms for visitation and custody are not in the best interest of the child, the court can accept a marital settlement agreement once the court is satisfied that the terms are in the best interest of the child. Holland v. Holland, 458 So.2d 81, 82 (Fla. 5th DCA 1984). In the case sub judice, the court did accept the marital settlement agreement and incorporated the terms into the final judgment at the request of the parties and their attorneys. The court found the agreement to be in the best interests of the parties and their minor child. The judge wrote in the final judgment
3. The Marital Settlement Agreement was executed by the parties and entered into by the parties after a full disclosure and is in the best interest of the parties and of the minor child (emphasis supplied). The Marital Settlement Agreement is incorporated by reference into this Judgment as if fully set forth herein.
Based upon the terms and conditions of the marital settlement agreement and the judge's finding that the contents were in the *502 best interest of the parties and the minor child, the judge complied with section 61.13(2)(b)2.b. No specific finding needs to be written by the trial judge in addition to the content of the marital settlement agreement and the final judgment. Section 61.13(2)(b)2.b does not require the trial court to make specific factual findings regarding the best interest of the child. See Murphy v. Murphy, 621 So.2d 455 (Fla. 4th DCA 1993) (ultimate factual finding that custody with one or another parent is in the best interest of the child is sufficient under § 61.13(3), which does not require written factual findings on factors considered; whenever in ch. 61 the legislature wanted to require written factual findings, it explicitly said so, e.g., § 61.075(3),.08(1), .30(1)(a), Fla. Stat. (1991)), review granted, No. 82, 019 (Fla. Dec. 20, 1993). This fact is especially true if no party complains of the oversight for two years.

McALISTER IS SEEKING A BELATED APPEAL
McAlister wants to modify the original judgment long after the time for review by the trial court and for appeal has expired. Pursuant to Fla.R.Civ.P 1.530, McAlister could have filed a motion for rehearing or a motion to alter or amend the final judgment within ten days of the entry of the judgment. He did not, even though he testified that Shaver would not allow him to see the child. McAlister could have moved the court for relief from the judgment to correct an error or mistake in the judgment up to one year after the entry of the judgment if he was concerned about liberal visitation. See Fla. R.Civ.P. 1.540. He did not. Finally, McAlister could have appealed the judgment of the trial court within 30 days if he was not satisfied with the trial court's handling of the issue of visitation. See Fla.R.App.P. 9.030 & 9.110. He did not. At this juncture, this court should be unwilling to assist McAlister in achieving his goal of perfecting a belated appeal. We have no jurisdiction to hear his attempt for a belated appeal.

CONCLUSION
The final judgment, which includes the trial judge's findings of fact and conclusions of law, comes to the appellate court with a presumption of correctness. Zinger v. Gattis, 382 So.2d 379 (Fla. 5th DCA 1980). The trial court must be sustained if correct for any reason. Terry v. Conway Land, Inc., 508 So.2d 401 (Fla. 5th DCA 1987), approved, 542 So.2d 362 (Fla. 1989). This precedent applies to the order on appeal before us as well as to the original judgment of 8 August 1990. There is ample evidence in the record that McAlister initially denied this child was his own and never wanted to be involved in her life. He presents himself as a natural father deprived of the companionship of his minor child; yet the record shows that he never offered Shaver, the child's mother, emotional or financial support during her pregnancy. He denied the child was his on two occasions in court documents. He negotiated to have the child's name changed from McAlister to Shaver. When offered the opportunity in writing by Shaver to visit the child, he never responded. In her initial pleadings in the dissolution in February of 1989, Shaver pled that McAlister had
disassociated himself from the Wife during her pregnancy and has little or no contact with her.... Shared parental responsibility would result in Wife having to `confer' with an individual who has neither the desire nor the capacity to determine what is in the best interest of the child.
McAlister's actions since the dissolution have not improved. He still did not present facts to negate the marital settlement agreement he signed placing the child in the custody of her natural mother without visitation.
Finally, the potential problem caused by this case is that, upon remand, the trial judge will be required to hold a hearing to determine if "shared parental responsibility" or "sole responsibility, with or without visitation rights, to the other parent" is in the best interest of the minor child. § 61.13(2), Fla. Stat. (1993). To protect the interest of the child, a guardian ad litem will need to be appointed. § 61.401, Fla. Stat. (1993). To determine the emotional or psychological impact, a child psychologist and/or psychiatrist will probably need to be appointed. Perhaps a home study of McAlister will be required. At the hearing, McAlister will be asked to explain his previous denial of paternity of the *503 child and why he allowed the child's name to be changed so that she is not known as his little McAlister, but as a little Shaver (no pun intended). He will be asked to explain why he has not taken advantage of the proffered visitation with the child. Ultimately, this hearing will have a damaging effect upon the child as she learns that she has a father who had denied her, but now seeks to re-enter her life.
The more reasonable explanation for the petition filed for modification is that McAlister is using the issue of visitation to compromise his obligation to pay child support. This court should not allow this belated appeal to further complicate the life of a child who has been twice denied by her father. I would affirm the order denying the petition to modify the final judgment of dissolution.
GRIFFIN, J., concurs.
NOTES
[1] Ronald had different lawyers representing him during the original dissolution and the modification proceedings.
[1] Although the child's initials were previously B.N.M., the wife's subsequent pleadings properly refer to the child as B.N.S. because the child's name had been changed as discussed below.