711 So.2d 1202 (1998)
Norman DE LAPOUYADE, Appellant,
v.
Jonelle DE LAPOUYADE, Appellee.
Nos. 96-04844, 97-00984.
District Court of Appeal of Florida, Second District.
April 29, 1998.
Rehearing Denied May 28, 1998.
*1203 John S. Jaffer of Wilson, Johnson & Jaffer, P.A., Sarasota, for Appellant.
Susan J. Silverman, Sarasota, for Appellee.
PER CURIAM.
This is a consolidated appeal from three post-dissolution of marriage orders. Norman De Lapouyade (the Former Husband) presents seven issues for our consideration. The issues address the modification of the visitation schedule, modification of the schedule for telephonic contact between the Former Husband and the children, make-up visitation, whether a $50,000 property settlement agreement was dischargeable in bankruptcy, and the award of attorney's fees to the Former Wife. We conclude that the trial court's order modifying every other weekend visitation was not supported by competent, substantial evidence and, therefore, we reverse. Because the Former Husband's debt to the Former Wife was in the nature of a property settlement, the trial court also erred in finding the debt could not be discharged in bankruptcy. The trial court's rulings on the remaining issues are clearly supported by the record and the law and, therefore, we affirm those issues without discussion.
The parties were married on February 28, 1981. They entered into a property settlement and separation agreement (Agreement) on April 21, 1989, and the marriage was dissolved on August 7, 1989. The parties have two minor children, a daughter, age thirteen, and a son, age ten. Pursuant to the Agreement, the Former Wife was designated as the primary residential parent and a visitation schedule was devised for the Former Husband's contact with the minor children. In addition to child support and alimony, the Former Husband was to pay the Former Wife $50,000 as property settlement within three years of the execution of the Agreement.
Between 1989 and 1993, the parties frequently engaged in litigation concerning support and visitation. On April 15, 1993, the trial court modified custody and visitation, granting the Former Wife sole parental responsibility. That order also prohibited the parties from having contact with each other. Subsequent to the 1993 modification hearing, the Former Wife sought enforcement of the financial provisions in the parties' Agreement. The Former Husband then filed for Chapter 7 bankruptcy.
In August 1994, the Former Wife moved with the children to North Carolina. In response to the Former Wife's motion for leave to move, the Former Husband objected and filed a counterclaim seeking custody of the children and/or a reduction in child support. Shortly before the hearing on the Former Wife's motion for leave to move and the Former Husband's counterclaim, the Former Wife filed a motion alleging that the $50,000 debt owed to her by the Former Husband had not been discharged in the Former Husband's bankruptcy proceeding. Following extensive hearings, the trial court entered the orders which are the subject of this appeal.
Although the trial court properly denied the Former Husband's request for modification of custody, we conclude that there was not competent, substantial evidence to modify the every other weekend visitation schedule. Modification of visitation is proper only if there is competent, substantial evidence showing that there has been a substantial and material change in the circumstances of the parties since the entry of the original order and that the best interests of the children will be served by the modification. See Ventriglia v. Vaughan, 623 So.2d 836, 838 (Fla. 2d DCA 1993); Perkins v. McKay, 460 So.2d 531, 532 (Fla. 2d DCA 1984).
In this case, the trial court modified the visitation schedule, finding:
Approximately eighteen months ago, a visitation plan was ordered that provided for visitation by the Former Husband every other weekend in North Carolina.

*1204 The Former Husband also has court ordered telephone visitation four days a week. The conflicts between the parties over the last eighteen months demonstrate that the present visitation plan is not workable.
The Former Wife must have the children at a telephone location four times a week. She testified that she often has to stop by the side of the road and use a public telephone so that the children may call their father at a specified time. This along with visitation every other weekend in North Carolina severely restricts the Former Wife's and the children's ability to lead a normal life.
Were the relationship between the parties relatively normal or civil, the above visitation would be workable because there would be some flexibility for the Former Wife and children to plan activities without being tied to a telephone and visits with the Former Husband in which he deliberately harasses the Former Wife.
While the evidence clearly supports the modification of the telephone contact schedule, there was no evidence that the modification of the every other weekend visitation schedule would serve the best interests of the children. To the contrary, the record shows that the visitation schedule of every other weekend had been working effectively for a period of about one year prior to the final hearing, and the testimony elicited at the final hearing indicates that the parties were satisfied with the previously-ordered visitation schedule. While the every other weekend visitation schedule may have been inconvenient for the Former Wife, that is not a valid reason for modifying visitation.
The Former Wife, having sole parental responsibility, has an obligation to ensure that the children have regular contact with their father. In Schutz v. Schutz, 581 So.2d 1290 (Fla.1991), the Florida Supreme Court stated:
[A] custodial parent has an affirmative obligation to encourage and nurture the relationship between the child and the noncustodial parent.... This duty is owed to both the noncustodial parent and the child. This obligation may be met by encouraging the child to interact with the noncustodial parent, taking good faith measures to ensure that the child visit and otherwise have frequent and continuing contact with the noncustodial parent and refraining from doing anything likely to undermine the relationship naturally fostered by such interaction.
581 So.2d at 1292 (citations omitted). While the trial judge obviously thought she was helping the situation by reconstructing the visitation schedule, her order substantially reduces the Former Husband's visitation. Once the Former Wife relocated to North Carolina, the trial court had a duty to make certain that the substitute visitation was adequate to foster a continuing, meaningful relationship between the noncustodial parent and the children. See Willey v. Willey, 683 So.2d 647, 650 (Fla. 4th DCA 1996). By the parties' own admissions, the visitation schedule in effect at the time of the final hearing was adequate to maintain such a meaningful relationship.
The issue of whether the $50,000 debt owed by the Former Husband to the Former Wife was dischargeable in bankruptcy came before the trial court on the Former Wife's motion to determine dischargeability of debt.[1] The debt arose from the parties' Agreement. The Agreement had one section for alimony and another entitled "Division of Real Property." In the division of real property section, the Former Wife agreed to give the Former Husband a quitclaim deed for the marital residence. The Agreement required that the Former Husband pay the Former Wife "$50,000.00 as equitable distribution of the marital property." The Former Husband was required to make monthly interest payments, with the entire $50,000 due and payable 36 months after execution of the agreement.
*1205 As explained in Fortner v. Fortner, 631 So.2d 327 (Fla. 2d DCA 1994),
Although some obligations between former spouses are dischargeable in bankruptcy, a debt to a spouse for child support or alimony is not dischargeable. 11 U.S.C. § 523(a)(5) (1988). Unlike many other debts, alimony and support are not automatically discharged in the absence of an objection by the creditor. See 11 U.S.C. § 523(c) (1988). Instead, it is now well-established that both bankruptcy court and state court have concurrent jurisdiction to determine whether the debt is a non-dischargeable obligation in the nature of alimony.
631 So.2d at 328 (citations omitted).
In determining whether a debt is dischargeable under federal bankruptcy law, the court must look to the substance of the agreement dissolving the marriage. See Huey v. Huey, 643 So.2d 1141, 1142-43 (Fla. 4th DCA 1994). In In re Pattie, 112 B.R. 437 (Bankr.M.D.Fla.1990), the bankruptcy court set forth ten factors to be considered in determining whether a debt is in the nature of support. Those factors are:
1.) whether the obligation imposed on the spouse has a characteristic of support in that it is designed to rehabilitate or to assist the spouse's rehabilitation after the divorce; 2.) whether the obligation is subject to contingencies such as remarriage or death; 3.) whether payment appears to balance disparate incomes; 4.) whether the obligation is payable in installments or in lump sums; 5.) whether they are minor children; 6.) whether there was, in fact, a need for support at the time it was awarded; 7.) the structure of the terms of the final decree; 8.) whether the award is modifiable; 9.) the manner of enforcement of the award; and 10.) whether there was a division of property in debts.
112 B.R. at 439. In this case, the trial court primarily focused on three factors to reach its determination: the periodic nature of the interest payments on the $50,000 debt; the disparity of income between the parties; and the Former Wife's bona fide need for support due to the Former Husband's retention of the marital home.
We conclude that the trial court incorrectly assessed the above factors. First, the fact that the Former Husband was required to make monthly interest payments on the debt did not convert the debt from a lump sum into a periodic obligation. That these payments were interest is confirmed by the fact that they could have been avoided by the prepayment of the debt. Second, the trial court's order failed to recognize several key factors including: (1) that the debt was not subject to contingencies such as remarriage or death; (2) that the debt was not modifiable; (3) that the Former Wife was awarded rehabilitative alimony in a separate section of the Agreement; (4) that there was a division of property and debts; (5) that there was a child support provision in the Agreement which required the Former Husband to pay the Former Wife $1250 per month; (6) that the Former Wife has an undergraduate degree in education and a graduate degree in guidance and counseling; and (7) that the marriage was of a relatively short duration (8 years).
This case is similar to In re Foege, 195 B.R. 815 (Bankr.M.D.Fla.1996), in which the bankruptcy court held that a lump sum obligation was dischargeable. In Foege, the debt was dischargeable despite the unemployed status of the wife, a college graduate, at the time of the divorce.
The Foege court stated:
[T]here is hardly any question that the balance owed by the Debtor to this Plaintiff is not in the nature of alimony or support for the following reasons: (1) the obligation is a lump-sum payment couched in the form of a money judgment, clearly not subject to modification; (2) the obligation is enforceable by execution and levy and not by contempt; and (3) without a doubt, the obligation did not provide for termination upon the Plaintiff's remarriage.
195 B.R. at 817. In addition, the Foege court stated that "the Court must also consider the duration of the marriage, and the spouse's marketable skills, education and training." 195 B.R. at 817. Applying the Pattie factors relevant to this case, the debt was part of the parties' property settlement agreement and, therefore, was dischargeable in bankruptcy.
We commend the trial judge's handling of this case. The propensity of the parties to *1206 battle each other made the case particularly troublesome. Because the record supports a conclusion that neither of the parties is without fault, it is a wonder that the children continue to prosper in spite of their parents' animosity towards each other. This court can only assume that the parents are doing a far better job of fostering the best interests of their children than their constant bickering and court wrangling would make it otherwise appear.
Because there was not competent, substantial evidence to support the modification of the visitation schedule, we reverse that portion of the order and remand for the trial court to reinstate the visitation schedule of every other weekend. We also reverse the order that determined the $50,000 debt was nondischargeable in bankruptcy. We affirm all remaining issues.
Reversed in part, affirmed in part.
CAMPBELL, A.C.J., and ALTENBERND and BLUE JJ., concur.
NOTES
[1] The Former Wife's allegations make it clear that the Former Husband's bankruptcy occurred prior to October 22, 1994. Had the bankruptcy occurred after that date, the Former Wife might have benefitted from the addition to the Bankruptcy Code, effective October 22, 1994, that exempts from discharge, subject to certain exceptions, all debts "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record...." 11 U.S.C. § 523(a)(15)(1994).