LEWIS, J.,
dissenting.
I find the majority’s discharge of jurisdiction in this case troubling. In its decision below, the Fourth District stated:
One of the issues the father raises on appeal is that the court erred in ordering him to attend a parenting course because the mother had not requested that relief. He relies on Williams v. Williams, 690 So.2d 601, 603 (Fla. 1st DCA 1996), in which the court stated:
As to point three, we must reverse the provision of the order requiring the former husband to obtain alcohol abuse counseling and to attend parenting classes. It is improper to enter an order which exceeds the scope of relief sought by the pleadings, ab *541 sent notice which affords the opposing party an opportunity to be heard with respect to the proposed relief.
We do not agree with Williams to the extent that it requires that attendance at parenting classes must be plead [sic],
760 So.2d at 982 (emphasis supplied). In discharging jurisdiction here, the majority fails to provide guidance to Florida families and family law litigants who face the issue regarding which the Fourth District expressed conflict with Williams: in a final hearing regarding child custody and visitation, can a trial court, in the child’s best interest, fashion appropriate relief related to custody or visitation which has not been specifically requested by either party in the pleadings? In so doing, the majority also avoids addressing equally significant, but perhaps more thorny, issues important to Florida families which are presented by this record and appropriate for our review: (1) whether a trial court, in awarding sole parental responsibility, can totally abdicate to the whims of a custodial parent its judicial responsibility and authority to determine the parameters of visitation, if any, which will be exercised by the noncustodial parent, and (2) whether attorney’s fees in the nature of a punitive measure can properly be awarded under Rosen v. Rosen, 696 So.2d 697 (Fla.1997), against a parent who has only attempted to have the issue of child custody and visitation properly decided, and who was required to seek relief from erroneous ex parte proceedings not of his making. Because this Court has an obligation to provide clear guidance and to dispel confusion in areas where express and direct conflict has been created by decisions of the district courts — an obligation which, in my view, is particularly crucial in the family law area, which intimately affects so many Floridians in today’s society — I must dissent. I am concerned that our failure to address the issues in this case fails to correct flaws in our family law jurisprudence that will continue to cause justice to be misdirected.
This case arose from an appeal from a final judgment of dissolution of marriage. Elizabeth Shaw (“the mother”) filed a petition for dissolution in April of 1997, seeking relocation to Louisiana, primary residential custody of the Shaws’ minor child (Jenna), shared parental responsibility with reasonable visitation, and child support. In her petition, the mother did not request that Samuel Shaw (“the father”) be ordered to attend a parenting class. The trial court then entered an erroneous emergency, ex parte order granting the mother temporary primary residential custody and authorizing the removal of the child to a different state.
Because the mother had already moved with Jenna to Louisiana based upon the ex parte proceedings and order, the father responded by filing an Emergency Motion for Temporary Injunction to Prevent Removal of Child And/Or Return Child to Jurisdiction, along with pleadings seeking custody of his child. The father also filed an expedited appeal from the ex parte order granting the mother temporary primary residential custody of Jenna, and authorizing the relocation to a different state. The father was the prevailing party on that appeal, with the Fourth District holding that the trial court had erred in granting the mother’s emergency motion without affording the father notice or an opportunity to be heard, and that the error in entering the original order was compounded by a delay of almost two months in setting an evidentiary hearing. See Shaw v. Shaw, 696 So.2d 391 (Fla. 4th DCA 1997).
As the case proceeded in the trial court, much of the controversy was cen *542 tered upon access to the child, who had been removed to Louisiana while the father remained in Florida. The litigation culminated in a final evidentiary hearing addressing custody, child support, and visitation issues. At the conclusion of that hearing, the trial court designated the mother as the custodial parent and awarded her temporary sole parental responsibility, ordered the father to attend a thirty-six week parenting course, and indicated that, after the father completed the course, a status conference would be held in which the issue of shared parental responsibility would be revisited. In the interim, the trial court ordered that the father would be permitted to exercise visitation only at the mother’s discretion. Finally, the trial judge ruled that, under Rosen v. Rosen, 696 So.2d 697 (Fla.1997), the father would be required to pay all of the mother’s attorneys’ fees, even those related to his successful appeal of the ex parte proceeding, observing only that “[t]his litigation should have never gone this far, not at all.” A timely appeal from this order followed.
On appeal, the Fourth District addressed three issues. First, it held that there was “ample evidence to support” the trial court’s grant of sole parental authority to the mother “for now.” 760 So.2d at 982. Second, it considered and rejected the father’s challenge to the trial court’s order giving the mother complete and absolute control over his visitation during this period, stating that, “[ajlthough that may generally be error, Letourneau v. Letourneau, 564 So.2d 270 (Fla. 4th DCA 1990), it was not improper under the specific facts in this case.” 760 So.2d at 982.
Third, it addressed the father’s contention that, because the possibility of requiring him to attend a parenting course was not specifically pled, he had no notice that the court might impose attendance at such a lengthy course as a condition to the court’s resolution of the parental responsibility issue. The district court rejected this contention, holding that the trial court did not err in ordering the father to attend a thirty-six week parenting course. See id. In so doing, it expressed disagreement with Williams v. Williams, 690 So.2d 601 (Fla. 1st DCA 1996) “to the extent that it requires that attendance at parenting classes must be [pled].” Id. In Williams, the court specifically stated:
As to point three, we must reverse the provision of the order requiring the former husband to obtain alcohol abuse counseling and to attend parenting classes. It is improper to enter an order which exceeds the scope of relief sought by the pleadings, absent notice which affords the opposing party an opportunity to be heard with respect to the proposed relief.
Id. at 608.
Williams does not require that a parent specifically plead or seek relief in the nature of requiring parenting classes before such may be ordered under the circumstances here. In Williams, the post-dissolution complaint addressed only the limited issue of child support arrearages. Because the scope of the hearing was so limited, due process required that the trial court address only those matters and issues for which the parties had proper notice and an opportunity to be heard.
Here, in contrast, the trial court entered its order in the context of a full and final dissolution hearing designed to resolve the broad matters of custody, parental responsibility, primary residence, and visitation. In this case, the father had notice that the parties would be litigating the issue of parental responsibility, that the mother had asked for sole parental responsibility, and that matters relating to the best interests of the child would be fully explored. *543 Under these circumstances, the trial court had authority to impose a parenting course requirement on one or both parents as part of its broad, inherent authority to act in the best interests of the child involved. Participation in an action involving custody, parental responsibility, primary residence, and visitation for minor children provides the parties notice that judicial authority to take action which is in the children’s best interests may be exercised with regard to available remedies[1] that touch and concern the subject matter of the particular proceeding. Cf. Vanoy v. Johnson, 459 So.2d 453, 454-55 (Fla. 5th DCA 1984) (concluding that the trial court did not err in modifying the mother’s visitation privileges in the context of a validly noticed hearing on the mother’s motion for change of custody, even though she had not sought enlarged visitation, because “the lesser deprivation which was granted by the trial court (enhancement of the mother’s visitation privileges) was encompassed in the greater requested deprivation (transfer of primary custody to the mother), which was noticed for hearing”). Where, as here, the issue of parental responsibility has been adequately framed by the pleadings and noticed for hearing, and an opportunity to be heard is provided to address the court’s proposed remedy,[2] due process is not violated by the court’s appropriate implementation of those tools — such as mandatory attendance at a parenting course — available to judges to further the child’s best interests.
I therefore agree with the Fourth District’s conclusion that, in a family law proceeding resolving child visitation issues, where parents are provided a meaningful opportunity to be heard regarding the remedy proposed, a parenting course need not be specifically pled to be implemented as a condition of visitation. In my view, however, the trial court here, totally contrary to and in direct conflict with applicable precedent, patently abused its discretion in abdicating its responsibility and authority to the mother to solely and exclusively determine whether, and to what extent, the father can exercise visitation, and in awarding attorney’s fees to the mother under Rosen v. Rosen, 696 So.2d 697 (Fla.1997), where the record does not support such an award and affirmatively demonstrates to the contrary. Therefore, insofar as the majority’s decision to dismiss the petition for review not only fails to address an expressly stated conflict between district court decisions (thereby eschewing its conflict jurisdiction), but also fails to address and correct very serious legal errors that are clearly contrary to well-established Florida law, I must respectfully dissent.
DETERMINATION OF VISITATION SCHEDULE
A trial court, in awarding temporary sole parental responsibility to one parent, cannot abdicate to that parent the court’s responsibility and authority to determine what visitation by the noncustodial parent, if any, may occur. In a temporary custody *544 determination, “the trial court determines the best place for the children until the court makes the final decision.... The courts generally try to cause the least amount of disruption in the child’s life ... while still taking into consideration the best interest of that child.” Griffith v. Griffith, 627 So.2d 527, 528 (Fla. 2d DCA 1993). Here, however, the trial court failed, and expressly transferred the authority, to determine what amount of visitation, if any, would be in Jenna’s best interest until the shared parental responsibility issue was finally resolved. It is very clear that the father had already been denied meaningful visitation with his child by the actions of the mother, and there was nothing to even suggest such circumstances would change.
As this Court has stated, “[t]he privilege of visiting the minor children of the parties to a divorce proceeding should never be denied either parent so long as he or she conducts himself or herself, while in the presence of such children, in a manner which will not adversely affect the morals or welfare of such progeny.” Yandell v. Yandell, 39 So.2d 554, 555 (Fla.1949); accord Booker v. Booker, 636 So.2d 796 (Fla. 1st DCA 1994); Baker v. Baker, 366 So.2d 873 (Fla. 4th DCA 1979). Further, a parent has a constitutionally protected “inherent right to a meaningful relationship with his children.” Schutz v. Schutz, 581 So.2d 1290, 1293 (Fla.1991). As stated by the Fifth District in McAlister v. Shaver, 633 So.2d 494, 497 (Fla. 5th DCA 1994):
It is a basic proposition that a parent has a natural legal right to enjoy the custody, fellowship and companionship of an offspring. Kent v. Burdick, 591 So.2d 994, 996 (Fla. 1st DCA 1991). The only limitation to this rule of parental privilege is that between parent and child, the ultimate welfare of the child must be controlling. Id.
Id. at 496. “The noncustodial parent should be granted reasonable visitation with a child unless 'there is proof of extreme circumstances, or the trial court finds that the visitation will adversely affect the welfare of the child.” Johnston v. Boram, 386 So.2d 1230, 1230 (Fla. 5th DCA 1980) (citing Chaffin v. Grigsby, 293 So.2d 404 (Fla. 4th DCA 1974)); accord De Lapouyade v. De Lapouyade, 711 So.2d 1202, 1203-04 (Fla. 2d DCA 1998) (observing that, absent such extreme circumstances, a custodial parent must ensure that the children have regular contact with the noncustodial parent). Thus, in Schutz v. Schutz, 581 So.2d 1290 (Fla.1991), we observed:
[A] custodial parent has an affirmative obligation to encourage and nurture the relationship between the child and the noncustodial parent. This duty is owed to both the noncustodial parent and the child. This obligation may be met by encouraging the child to interact with the noncustodial parent, taking good faith measures to ensure that the child visit and otherwise have frequent and continuing contact with the noncustodial parent and refraining from doing anything likely to undermine the relationship naturally fostered by such interaction.
581 So.2d at 1292 (citations omitted). In awarding substitute visitation to a noncustodial parent who lives in a state other than that where the minor child resides, the trial court has a duty to make certain that the substitute visitation awarded is adequate to foster a continuing, meaningful relationship between the noncustodial parent and the child. See De Lapouyade, 711 So.2d at 1204. This is, of course, subject to judicial oversight, but such visitation should be meaningful and practical. Such may be limited or discontinued, but *545 only for proper reasons articulated in an appropriate order.
In this case, the trial court correctly recognized that, pursuant to section 61.13(2)(b)2.b., Florida Statutes (1997), a court may order “sole parental responsibility, with or without visitation rights, to the other parent when it is in the best interests of’ the minor child. However, the evidence in this case is not only overwhelming, it is uncontroverted that the father and this child had a loving and an exceptional relationship. The trial court also found that there was “no reason the Respondent [father] can not [sic] visit with the child in Florida and in Louisiana.” After awarding the mother temporary sole parental responsibility based upon these findings, the trial court incorrectly delegated its discretion and authority regarding a determination of the father’s visitation rights to the mother, stating, at the hearing, that she would “be the Court on this.”
Under well-established Florida law, this was error, and tantamount to failing to resolve the father’s temporary visitation rights at all. As observed by the Fifth District Court of Appeal in McAlister:
It is the duty of a trial judge to consider the relationships between parents and child in a dissolution action and to address visitation rights in an order when sole parental responsibility is awarded. § 61.13(2)(b)2.b, Fla.Stat. (1991). The court’s responsibility to the child cannot be abdicated to any parent or expert.
633 So.2d at 496; cf. also Haas v. Hans, 686 So.2d 799, 800 (Fla. 4th DCA 1997) (observing that the trial court, in determining visitation, “is not bound by any agreement between parents and should not follow such an agreement if it is not in the child’s best interests to do so”).
The father is, in my view, entitled to meaningful visitation. This entire case started down the wrong path from its ex parte inception. It is clear that there was absolutely no justifiable reason for a party to seek or a court to award such extreme relief on an ex parte basis. It appears that, after the procedural error was properly corrected, the substantive harm was never relieved. The harm was only compounded as meaningful visitation was never adequately and properly addressed in this proceeding. I suggest that no parent — neither a mother nor a father— should be permitted to remove a child from the realm of meaningful, reasonable, and responsible visitation and then continue to frustrate that visitation as occurred here, particularly based on the evidence presented in this record.
We must also recognize that long-distance visitation is difficult under even the best of circumstances. Courts should understand and consider that merely entering an order providing a parent visitation at a distant location may amount to no visitation at all if the practical realities render visitation illusory. It is essential that we become sensitive to both the economics and realities of the circumstances. Travel, food, and lodging expenses impact the implementation of parents traveling long distances for interaction with their children — that relationship to which they are entitled. Job requirements effectively reduce the opportunities for meaningful visitation. Not all parents have employment flexibility that will tolerate absences from work for long weekends to afford travel days to accommodate weekend visitation. Here, by erroneously affording the father visitation only as the mother may decide in her sole discretion, the trial court has committed and the district court overlooked an egregious violation of well-established Florida law and misdirected our jurisprudence. The trial judge here has given the mother the power to unilat *546 erally decide when, where, how long and in which state the father may visit the child, if at all, and such has not been corrected through the appellate process.
Therefore, I would disapprove the Fourth District’s decision insofar as it upholds the trial court’s order delegating total discretion and authority to the mother to determine visitation during the period of her sole parental responsibility. Rather, consistent with established precedent, I would direct that the case be remanded to the trial court to determine an appropriate schedule of visitation by the father, with instructions.
AWARD OF ATTORNEY’S FEES UNDER ROSEN
Lastly, it is my view that the trial court erred in awarding all of the mother’s attorney’s fees in this case under Rosen v. Rosen, 696 So.2d 697 (Fla.1997). Contrary to the father’s suggestion, Rosen principles may apply in custody litigation. However, based on this record, the trial court’s award of all of the mother’s fees was an absolute abuse of discretion. The father had prevailed in litigation to reverse the ex parte relocation order not of his making which the mother initially obtained improperly without providing notice to the father. Further, even assuming that a partial award of attorney’s fees would be appropriate in this case (which it certainly is not), the trial court erred in not articulating the specific reasons for such an award. Its conclusory statement that "[t]his litigation should have never gone this far, not at all” does not suffice.
In this case, the lower court has totally misapplied Rosen to the facts reflected in this record. The order here suffers from the problems of both Dake v. Kirkley, 767 So.2d 1289 (Fla. 5th DCA 2000), and Taylor v. Taylor, 746 So.2d 577 (Fla. 1st DCA 1999). The trial court has failed to articulate a sufficient basis for its award of attorney’s fees under Rosen. Further, since the father prevailed in appealing from the erroneous initial ex parte relocation order, and has only properly sought access to his child, the record clearly does not support an award of fees applicable to that part of the litigation.
For these reasons, I would also disapprove the Fourth District’s decision insofar as it upholds the award of all attorney’s fees to the mother in this case, contrary to well-established law in this State. Here, the father is being improperly punished contrary to any notion of justice because he sought appellate review of an erroneous order and was successful in having the error corrected. In my view, the record does not have even a hint of support for an award of fees under Rosen.
SHAW, J., concurs.

. This is not the first case to come before this Court in which parenting training has been imposed as a condition on a noncustodial parent. See Belair v. Drew, 770 So.2d 1164 (Fla.2000) (addressing the grandparent visitation statute in a case were the petitioner and the respondent were adjudicated divorced, the petitioner was granted sole parental responsibility of the couple’s minor child, and the respondent was granted limited visitation once he completed a court-ordered seminar on parenting).

. Significantly, the father here did not protest when the parenting course condition was imposed, or ask to be heard with respect to the reasonableness of the condition, or seek to present any further evidence or legal argument directed to such issue.